# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MIRAMAR POLICE OFFICERS' RETIREMENT PLAN, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 9860-CB |
| K. RUPERT MURDOCH, PETER L. BARNES, JOSÉ MARÍA AZNAR, NATALIE BANCROFT, ELAINE L. CHAO, JOHN ELKANN, JOEL I. KLEIN, JAMES R. MURDOCH, LACHLAN K. MURDOCH, ANA PAULA PESSOA, MASROOR SIDDIQUI, ROBERT J. THOMSON, and NEWS CORPORATION, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Date Submitted:  February 10, 2015
Date Decided:  April 7, 2015

Stuart M. Grant and Cynthia A. Calder of GRANT & EISENHOFER P.A., Wilmington, Delaware; Robert D. Klausner and Adam P. Levinson of KLAUSNER, KAUFMAN, JENSEN & LEVINSON, Plantation, Florida; *Attorneys for Plaintiff*.

Gregory V. Varallo, Kevin M. Gallagher and Christopher H. Lyons of RICHARDS, LAYTON & FINGER P.A., Wilmington, Delaware; *Attorneys for Defendants*.

**BOUCHARD, C.**

## I.    INTRODUCTION

This action involves a dispute over whether a corporation created to effectuate a spin-off transaction is bound by provisions in a contract that the former parent corporation had entered into in connection with resolving a lawsuit with its stockholders.

In 2006, the media conglomerate News Corporation ("Old News Corp") entered into a Stipulation of Settlement (the "Settlement Agreement") to settle stockholder litigation filed in this Court in 2005. Subject to certain exceptions, the Settlement Agreement prevents Old News Corp during a period of twenty years from maintaining a stockholder rights plan for longer than one year without obtaining stockholder approval.

In 2013, Old News Corp transferred its newspaper and publishing business into a wholly-owned subsidiary ("New News Corp") and then spun off New News Corp to its stockholders pursuant to the terms of a Separation and Distribution Agreement. After the spin-off, Old News Corp was renamed Twenty-First Century Fox, Inc., which is now a broadcast and media company.

In June 2013, the board of New News Corp adopted a one-year rights plan. In June 2014, the board extended that plan for an additional year without obtaining stockholder approval. In this action, a stockholder of New News Corp alleges that New News Corp, which was formed years after the Settlement Agreement was signed and is not a party to that contract, is nonetheless bound by that agreement as a transferee or assign of Old News Corp and, thus, that the 2014 extension of New News Corp's rights plan was impermissible under the Settlement Agreement.

1

In its complaint, plaintiff asserts four causes of action against New News Corp and its board of directors: declaratory judgment (Count I); breach of contract (Count II); breach of fiduciary duty (Count III); and reformation due to mutual mistake (Count IV). Defendants moved to dismiss the complaint in its entirety under Court of Chancery Rule 12(b)(6) for failure to state a claim and Count IV under Court of Chancery Rule 9(b) for failure to plead mistake with particularity.

In this opinion, I conclude that it is not reasonably conceivable that New News Corp is bound by the rights plan restrictions of the Settlement Agreement because, under the only reasonable interpretation of the Settlement Agreement and the Separation and Distribution Agreement, Old News Corp's rights and obligations under the Settlement Agreement were not transferred or assigned to, or otherwise assumed by, New News Corp. I thus dismiss Count I for failure to state a claim. Because Counts II-IV are each premised on New News Corp being bound by the Settlement Agreement, I also dismiss those claims on that basis.

Nothing in this decision relieves Old News Corp, now operating as Twenty-First Century Fox, Inc., from performing under the Settlement Agreement. It continues to be bound by those obligations, including the rights plan restrictions set forth therein.

## II. BACKGROUND[1]

### A. The Parties

Defendant News Corporation ("New News Corp" or the "Company"), a Delaware corporation based in New York, New York, is a publicly traded, newspaper and publishing company. The Company has two classes of common stock: Class A non-voting shares and Class B voting shares.

Defendants K. Rupert Murdoch, Peter L. Barnes, José María Aznar, Natalie Bancroft, Elaine L. Chao, John Elkann, Joel I. Klein, James R. Murdoch, Lachlan K. Murdoch, Ana Paula Pessoa, Masroor Siddiqui, and Robert J. Thompson have been the twelve members of New News Corp's board of directors (the "Board" or the "Individual Defendants") at all relevant times. Other than three overlapping directors—Defendants K. Rupert Murdoch, James R. Murdoch, and Lachlan K. Murdoch—the board of New News Corp has different members than the board of Old News Corp.[2]

---

[1] Unless noted otherwise, the facts recited in this opinion are based on the well-pled allegations of the Verified Amended Complaint (the "Complaint"), which are accepted as true. *See Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011).

[2] *See Board of Directors*, 21st Century Fox, http://www.21cf.com/Management/ BoardofDirectors (last visited Apr. 6, 2015). I take judicial notice of this fact because the accuracy of this source is not subject to reasonable dispute. *See Solomon v. Armstrong*, 747 A.2d 1098, 1121 n.72 (Del. Ch. 1999), *aff'd*, 746 A.2d 277 (Del. 2000) (TABLE); D.R.E. 201(b).

Rupert Murdoch is the Chairman of the Board and Chief Executive Officer of New News Corp.[3]  Individually and through the Murdoch Family Trust, Rupert Murdoch beneficially owns 39.4% of New News Corp's Class B voting stock.

Plaintiff Miramar Police Officers' Retirement Plan ("Plaintiff") has been a New News Corp stockholder at all relevant times.

B.    **The Predecessor of Old News Corp Announces a Plan to Reincorporate in Delaware**

On April 6, 2004, the predecessor of Old News Corp, an Australian corporation named The News Corporation Limited ("TNCL"), announced a reorganization plan to reincorporate in Delaware as Old News Corp.  In the reorganization, holders of TNCL's Ordinary shares would receive a proportional amount of Old News Corp's Class A non-voting stock, and holders of TNCL's Preferred Limited Voting Ordinary shares would receive a proportional amount of Old News Corp's Class B voting stock.  TNCL's Ordinary shares and Preferred Limited Voting Ordinary shares would vote separately on the reincorporation, which required approval by a 75% supermajority of all shares voting and 50% of all stockholders voting.

As TNCL would explain to its investors in a September 15, 2004, Information Memorandum, there are significant differences between Australian corporate law and Delaware corporate law relating to, among other things, the ability of the board of

_____

[3] Compl. ¶ 14.  Contrary to this allegation, New News Corp's website reflects that Robert Thomson, not Rupert Murdoch, is the Company's CEO and assumed that role in January 2013. *See Our Leadership*, News Corp., http://www.newscorp.com/about/leadership (last visited Apr. 6, 2015).

4

directors to adopt a stockholder rights plan or "poison pill." Under Australian law, a board may not adopt a rights plan without stockholder approval. By contrast, under Delaware law, a board may do so at any time without stockholder approval, subject to the directors' fiduciary duties, any limitations in the corporation's charter or bylaws, and any restrictions in a valid and enforceable agreement to which the corporation is a party.[4]

### C. TNCL Stockholders Complain About the Effects of the Reincorporation on Their Franchise Rights

In July 2004, at the behest of certain TNCL stockholders, the Australian Council of Super Investors, Inc. ("ACSI"), a non-profit organization providing corporate governance services to its Australian pension fund members, and Corporate Governance International ("CGI"), an Australian proxy advisory firm, drafted a "Governance Article" to be included in Old News Corp's charter. The Governance Article was intended to incorporate aspects of Australian corporate law to govern certain matters involving Old News Corp's internal affairs. In particular, the proposed Governance Article provided that "the Board shall not have the power to, and shall not, create or implement any

---

[4] *See, e.g.*, *Moran v. Household Int'l, Inc.*, 500 A.2d 1346, 1351-53, 1357 (Del. 1985) (concluding that it is within the power and authority of directors to adopt a stockholder rights plan pursuant to 8 *Del. C.* §§ 141, 151 and 157 while noting that this grant of power and authority does not relieve directors "of their basic fundamental duties to the corporation and its stockholders"); *In re Nat'l Intergroup, Inc. Rights Plan Litig.*, 1990 WL 92661 (Del. Ch. July 3, 1990), reprinted at 16 Del. J. Corp. L. 841, 849-50 (Del. Ch. 1990) (granting summary judgment to plaintiffs on a claim that the board of directors breached their contractual obligations under a resolution approved by stockholders requiring stockholder approval of the adoption of a new rights plan).

device, matter or thing the purpose, nature or effect of which is commonly described as a 'poison pill.' "[5]

On August 20, 2004, ACSI and CGI sent the Governance Article to TNCL and requested that it be included in Old News Corp's charter. On September 26, 2004, after some back and forth, TNCL informed ACSI that "it would not adopt the Governance Article, and would not negotiate any further."[6]

### D.     TNCL/Old News Corp Adopts a Policy Requiring Stockholder Approval of a Rights Plan Lasting Longer Than One Year

Soon thereafter, TNCL resumed negotiations with ACSI over the proposed Governance Article. During those negotiations, TNCL proposed that the board of Old News Corp adopt a policy that, immediately following the reincorporation, "no [rights plan] instituted by the [b]oard could remain in effect longer than one year unless approved by stockholders, nor could a [rights plan] be 'rolled over' for successive terms without stockholder approval."[7] ACSI approved this and related corporate governance proposals.

On October 6, 2004, TNCL issued a press release announcing the new policy:

The [b]oard has adopted a policy that if a shareholder rights plan is adopted by the [c]ompany following reincorporation, the plan would have a one-year sunset clause unless shareholder approval is obtained for an extension. The policy also provides that if shareholder approval is not obtained, the

---

[5] Compl. ¶ 32.

[6] *Id.* ¶ 35.

[7] *Id.* ¶ 39.

[c]ompany will not adopt a successor shareholder rights plan having substantially the same terms and conditions.[8]

On October 7, 2004, TNCL reiterated the general contours of this policy in an email to ACSI and in letters to its stockholders. TNCL also submitted this policy to the Federal Court of Australia "in connection with proceedings seeking the court's approval of the reorganization," which was required under Australian law.[9]

On October 26, 2004, TNCL's stockholders approved the reorganization. Approximately one week later, the Federal Court of Australia also approved it.

On November 3, 2004, TNCL shares stopped trading on the Australian Stock Exchange, and Old News Corp shares began trading on a when-issued basis on the New York Stock Exchange.

### E. TNCL/Old News Corp Adopts a Rights Plan

On November 3, 2004, Liberty Media Corporation ("Liberty"), which owned approximately 9.1% of TNCL/Old News Corp's Class B voting stock at the time, disclosed that it had partnered with a third party to acquire an additional 8% of the company's voting stock, increasing its ownership to approximately 17.1%.

On November 8, 2004, in response to Liberty's disclosure, the TNCL/Old News Corp board announced that it had adopted a rights plan with a 15% threshold. The plan provided that Liberty's disclosure did not trigger the issuance of rights under the plan, but any additional acquisition by Liberty of 1% or more of the company's stock would do so.

---

[8] *Id.*

[9] *Id.* ¶ 41.

7

In the press release announcing its decision to adopt the rights plan, the TNCL/Old News Corp board disclosed that the plan would expire in one year unless ratified by stockholders. The board specifically referenced that the terms of this rights plan were consistent with the policy it had announced in October 2004.

On November 12, 2004, the reincorporation was completed, and the former directors of TNCL all continued as directors of Old News Corp.

## F. Old News Corp Extends the Rights Plan Beyond November 2005

On August 10, 2005, in a Form 8-K Current Report announcing Old News Corp's financial results for the second quarter of 2005, the board of Old News Corp disclosed that it had unilaterally decided to extend its then-existing rights plan for an additional two years. According to Plaintiff, the Form 8-K "made no reference to the [b]oard's unanimously adopted policy" requiring stockholder approval of a rights plan lasting longer than one year.[10]

## G. Stockholders Sue Old News Corp and its Board Over the Extension of the Rights Plan

On October 7, 2005, Old News Corp stockholders sued the company and its directors in this Court. The plaintiffs alleged five causes of action: (i) breach of contract; (ii) promissory estoppel; (iii) fraud; (iv) negligent misrepresentation and equitable fraud; and (v) breach of fiduciary duty. On October 22, 2005, the defendants in that lawsuit moved to dismiss for failure to state a claim.

---

[10] *Id.* ¶ 47.

On December 20, 2005, Chancellor Chandler dismissed the fraud, negligent misrepresentation and equitable fraud, and fiduciary duty claims, but denied the defendants' motion to dismiss the breach of contract and promissory estoppel claims. Chancellor Chandler concluded, in relevant part, that the complaint alleged facts "barely sufficient to state a claim that defendants made an oral contract with the shareholders[,] . . . [and] the key term of the alleged oral contract was that shareholders would get to vote on any extension of a poison pill."[11]

On March 17, 2006, with a trial scheduled to begin on April 24, 2006, the parties began settlement negotiations. The focus of those negotiations was an agreement "that would give the [b]oard the ability to adopt a pill of only limited duration, and that anything longer (through adoption of another pill or extension of an existing pill) would require an affirmative vote of the stockholders."[12] Both sides also "recognized that an exception to the requirement of a vote would be acceptable in order to allow the [b]oard to act in the face of an imminent threat to [Old News Corp] where there was insufficient time to seek a stockholder vote."[13]

On April 12, 2006, the parties entered into the Settlement Agreement[14] to settle that lawsuit. The Settlement Agreement contractually limits the scenarios in which the

---

[11] *UniSuper Ltd. v. News Corp.*, 2005 WL 3529317, at *5 (Del. Ch. Dec. 20, 2005).

[12] Compl. ¶ 54.

[13] *Id.*

[14] Defs.' Ex. 1 (Settlement Agreement). Because the Settlement Agreement is integral to Plaintiff's claims and incorporated by reference into the Complaint, it is properly before

9

board of Old News Corp may maintain a rights plan for longer than one year without first obtaining stockholder approval. The two key provisions of the Settlement Agreement implicated in this action are Paragraphs 21(f)(i) and 36.

Paragraph 21(f)(i), which is relevant to Plaintiff's breach of contract claim asserted in Count II, imposes certain limitations governing Old News Corp's adoption or extension of a rights plan. It states as follows:

> Upon the expiration of the [then-existing rights plan], or any other rights plan adopted consistent with the remainder of this paragraph (f), no further rights plan shall be adopted for a period of 9 months (the "Interim Period"). Thereafter, [Old] News Corp. shall have the right to adopt new rights plans, without stockholder approval, with a duration of up to one year. The expiration of any such rights plans shall be followed by another Interim Period of 9 months, during which the rights plan shall not be rolled over or extended, and no new shareholder rights plan shall be adopted, without shareholder approval. *Notwithstanding the foregoing*, [Old] News Corp. shall have the right to adopt a new rights plan (or extend an existing rights plan), with a duration of one year, during any Interim Period, if prior to or during that Interim Period (1) any person acquires beneficial ownership of voting stock, and after such acquisition such person beneficially owns at least 5% of the voting stock of [Old] News Corp. (provided that this clause (1) shall not apply if such person beneficially owned 5% or more of [Old] News Corp.'s voting stock prior to the commencement of such Interim Period unless (x) such person acquires at least another 5% of the outstanding voting stock prior to or during such Interim Period, (y) such person acquires beneficial ownership of voting stock during such Interim Period and after such acquisition such person beneficially owns at least 15% of the outstanding voting stock, or (z) such person beneficially owned at least 15% or more of [Old] News Corp.'s voting stock prior to the commencement of such Interim Period and such person acquires at least 3% of the outstanding voting stock during such Interim Period) . . . .[15]

---

the Court on Defendants' motion to dismiss. *See In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 69-70 (Del. 1995).

[15] Settlement Agreement ¶ 21(f)(i) (emphasis added).

I refer at times to the sentence beginning "Notwithstanding the foregoing" in Paragraph 21(f)(i) as the "Vote Exception."

Paragraph 36 provides that the Settlement Agreement is binding upon the parties and, among others, their "transferees, successors and assigns."[16] It is described further below in the analysis of Plaintiff's declaratory judgment claim asserted in Count I.

On June 1, 2006, Chancellor Chandler approved the Settlement Agreement and retained jurisdiction for purposes of enforcing it. Under Paragraph 20 of the Settlement Agreement, the lawsuit would be dismissed with prejudice if, at the company's October 2006 annual meeting, Old News Corp's stockholders voted in favor of extending the then-existing stockholder rights plan for two years.[17] In October 2006, Old News Corp's stockholders approved the two-year extension. By its terms, Paragraph 21(f) of the Settlement Agreement expires on the twentieth anniversary of Old News Corp's October 2006 annual meeting.[18]

### H. Old News Corp Separates and Spins Off New News Corp

In 2013, the board of Old News Corp decided to split Old News Corp into two publicly traded companies. The primary agreement governing the transaction was the

---

[16] *Id.* ¶ 36.

[17] *Id.* ¶¶ 20(c)-(d). After two years, that rights plan could be extended for an additional year in limited circumstances not implicated here.

[18] *Id.* ¶ 21(i).

Separation and Distribution Agreement,[19] which is discussed below in the analysis of the merits of Plaintiff's claims.

Under the Separation and Distribution Agreement, Old News Corp transferred its newspaper and publishing business to New News Corp, a wholly owned subsidiary, on June 28, 2013. That same day, Old News Corp distributed all of its New News Corp stock to its stockholders. After the separation, the Individual Defendants comprised the Board of the newly-independent New News Corp, and Chairman Rupert Murdoch beneficially owned 39.4% of the Company. As noted above, none of the twelve members of the Board of New News Corp serves on the board of Old News Corp except for the three Murdoch directors.

## I.     New News Corp Adopts, and Then Extends, a Rights Plan

On June 28, 2013, in conjunction with the corporate separation, the Board of New News Corp adopted the stockholder rights plan (the "Rights Plan") that is the subject of this litigation.[20] The Rights Plan, which has a 15% threshold,[21] was to expire after one

---

[19] Defs.' Ex. 4 (Separation and Distribution Agreement). The Separation and Distribution Agreement is properly before the Court because it is integral to Plaintiff's claims. *See Santa Fe*, 669 A.2d at 69-70. Plaintiff makes no argument based on the ancillary transaction agreements, which are not relevant to the present motion.

[20] I accept as true the well-pled allegation that New News Corp adopted the Rights Plan on June 28, 2013, Compl. ¶ 60, but I note that the parties stated at oral argument that New News Corp adopted the Rights Plan on June 14, 2013. Tr. of Oral Arg. 26, 98.

[21] Tr. of Oral Arg. 42.

year.  Plaintiff acknowledges that the Board's adoption of the Rights Plan in June 2013 "did not violate the terms of the Settlement Agreement."[22]

On September 10, 2013, Southeastern Asset Management, Inc. ("Southeastern"), an investment management firm, filed a "passive investor" Schedule 13G with the Securities and Exchange Commission disclosing that it had acquired approximately 11.9% of the Company's voting stock.  By March 30, 2014, Southeastern had acquired an additional 2.4% of the Company's voting stock, increasing its ownership to approximately 14.3%.[23]

On June 18, 2014, ten days before the Rights Plan was to expire, the Board approved a one-year extension of the Rights Plan without obtaining stockholder approval. Plaintiff alleges that, at that time, "[n]o circumstance, as set forth in the Settlement Agreement . . . , exist[ed] that would [have] allow[ed] [New] News Corp to extend the [Rights Plan] without stockholder approval."[24]  The Rights Plan will now expire on June 18, 2015.[25]

## J.    Procedural History

On July 7, 2014, Plaintiff initiated this action.  On August 25, 2014, Plaintiff filed the operative Complaint, which asserts four causes of action: declaratory judgment that

---

[22] Compl. ¶ 60.

[23] *Id.* ¶ 63.

[24] *Id.* ¶ 62.

[25] Tr. of Oral Arg. 43.

New News Corp is bound by the Settlement Agreement (Count I); breach of contract on the ground that the Board's extension of the Rights Plan was a breach of the Settlement Agreement (Count II); breach of fiduciary duty on the ground that the Board acted in bad faith by causing New News Corp to breach the Settlement Agreement (Count III); and, in the alternative, reformation of the Vote Exception in the Settlement Agreement on the ground of mutual mistake (Count IV).

On September 9, 2014, Defendants moved to dismiss the Complaint in its entirety under Court of Chancery Rule 12(b)(6) for failure to state a claim. They also moved to dismiss Count IV under Court of Chancery Rule 9(b) for failure to allege mistake with particularity. On February 10, 2015, I heard oral argument on Defendants' motion.

## III. LEGAL ANALYSIS

Defendants' motion to dismiss under Court of Chancery Rule 12(b)(6) must be denied unless, accepting as true all well-pled allegations of the Complaint and drawing all reasonable inferences from those allegations in Plaintiff's favor, there is no "reasonably conceivable set of circumstances susceptible of proof" in which Plaintiff could recover.[26] The failure to plead an element of a claim warrants dismissal under Rule 12(b)(6).[27]

The meaning of the Settlement Agreement underlies all of Plaintiff's claims. Delaware law "adheres to the objective theory of contract interpretation,"[28] which

---

[26] *See Cent. Mortg.*, 27 A.3d at 536.

[27] *See Crescent/Mach I P'rs, L.P. Turner*, 846 A.2d 963, 972 (Del. Ch. 2000).

[28] *Sassano v. CIBC World Markets Corp.*, 948 A.2d 453, 462 (Del. Ch. 2008).

14

requires courts to interpret a particular term to mean "what a reasonable person in the position of the parties would have thought it meant."[29]  Where a contract term is fairly susceptible of only one reasonable interpretation, a court will interpret that unambiguous term according to its "ordinary and usual meaning."[30]  That the parties dispute how to interpret a term does not render the contract ambiguous.  Rather, under Delaware law, "a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings."[31]

Because contract interpretation is a question of law, "a motion to dismiss is a proper framework for determining the meaning of contract language."[32]

> Several contract interpretation principles guide my inquiry into whether a particular term is reasonably susceptible of different meanings.  For instance, I may consider how a term operates with respect to the contract as a whole.  Similarly, I should avoid interpreting a term in an unreasonable way that would yield an absurd result or that would render other contractual language superfluous.[33]

---

[29] *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992).

[30] *Id.* at 1195.

[31] *Id.* at 1196.

[32] *Allied Capital Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006).

[33] *Veloric v. J.G. Wentworth, Inc.*, 2014 WL 4639217, at *9 (Del. Ch. Sept. 18, 2014) (citing, *inter alia*, *Alliance Data Sys. Corp. v. Blackstone Capital P'rs V L.P.*, 963 A.2d 746, 769 (Del. Ch. 2009), *aff'd*, 976 A.2d 170 (Del. 2009) (TABLE); *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010)).

15

"Dismissal, pursuant to Rule 12(b)(6), is proper only if the defendants' interpretation is the *only* reasonable construction as a matter of law."[34]

### A. Count I Fails to State a Claim Because New News Corp is Not Bound by the Settlement Agreement

In Count I, Plaintiff seeks a declaratory judgment that "[New] News Corp is bound by the terms of the Settlement Agreement."[35] Specifically, Plaintiff contends that New News Corp is bound by the rights plan restrictions of the Settlement Agreement on two grounds: (i) pursuant to Paragraph 36 of the Settlement Agreement because New News Corp was a transferee and/or assign of certain assets and liabilities from Old News Corp in the spin-off;[36] and (ii) pursuant to Section 2.02(g) of the Separation and Distribution Agreement because the Settlement Agreement was a "Mixed Contract" that "covers, and inures to, both the newspaper and the media assets" now owned by New News Corp and Old News Corp, respectively.[37] Before turning to those two specific arguments, it is important for context to consider what is not at issue in this case.

Plaintiff acknowledges that the spin-off of Old News Corp's newspaper and publishing business was done for legitimate business reasons[38] and that it did not constitute a "*de facto* merger" whereby New News Corp could be viewed as a mere

---

[34] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003).

[35] Compl. ¶ 67.

[36] Pl.'s Ans. Br. 14-17.

[37] *Id.* 18.

[38] Tr. of Oral Arg. 125.

continuation of Old News Corp under a different name.[39] Nor could the contrary contentions be sustained. On July 1, 2013, the first business day after the spin-off, Old News Corp (now known as Twenty-First Century Fox, Inc.) was a broadcast and media company with a market capitalization of approximately $68.1 billion while New News Corp (managed under the direction of a different board of directors and now known as News Corporation) was a newspaper and publishing company with a market capitalization of approximately $5.6 billion.[40] New News Corp was plainly not a mere continuation of Old News Corp, and, irrespective of the outcome of this case, Old News Corp will remain bound by the rights plans restrictions set forth in the Settlement Agreement.[41]

I now address Plaintiffs' two arguments for why New News Corp is bound by the Settlement Agreement.

### 1. The Rights Plan Restrictions Did Not Transfer to New News Corp Pursuant to Paragraph 36 of the Settlement Agreement

Paragraph 36 of the Settlement Agreement, which is governed by Delaware law,[42] defines the universe of persons to be bound by the terms of the Settlement Agreement:

---

[39] Pl.'s Ans. Br. 19, fn. 7.

[40] *See* WolframAlpha, http://www.wolframalpha.com (search "Twenty-First Century Fox, Inc. market capitalization on July 1, 2013"); *id.* (search "News Corporation market capitalization on July 1, 2013"). I take judicial notice of these market capitalizations based on reported stock prices because they are not subject to reasonable dispute. *See Lee v. Pincus*, 2014 WL 6066108, at *4 n.11 (Del. Ch. Nov. 14, 2014); D.R.E. 201(b)(2).

[41] Tr. of Oral Arg. 19-20.

[42] Settlement Agreement ¶ 43.

> This Settlement shall be binding upon and shall inure to the benefit of the parties (and, in the case of the benefits, all Released Persons) and the respective legal representatives, heirs, executors, administrators, transferees, successors and assigns of all of such foregoing persons and upon any corporation, partnership, or other entity into or with which any party or person may merge or consolidate.[43]

Significantly, Paragraph 36 expressly provides that the Settlement Agreement is to be binding on any entity into which Old News Corp merges or with which it consolidates, demonstrating that the parties knew how to specifically address the effect that certain significant corporate transactions would have on Old News Corp's obligations under the Settlement Agreement. By contrast, Paragraph 36 does not specifically reference other obvious forms of significant corporate transactions that may involve Old News Corp, namely asset transfers or spin-offs. Applying the interpretive principle that "the expression of one thing is the exclusion of another,"[44] the plain terms of Paragraph 36 thus suggest that the parties to the Settlement Agreement, which was negotiated by sophisticated counsel experienced in corporation transactions,[45] did not intend for that contract to be binding on the recipient of assets in an asset transfer and spin-off transaction.

---

[43] *Id.* ¶ 36.

[44] *Delmarva Health Plan, Inc. v. Aceto*, 750 A.2d 1213, 1216 (Del. Ch. 1999) (discussing this principle, which is more common in statutory construction, in a contract dispute).

[45] The signatories to the Settlement Agreement were Grant & Eisenhofer, P.A. (lead counsel for plaintiffs) and Skadden, Arps, Slate, Meagher & Flom LLP (counsel for defendants). Both firms represented that they had the authority to act on behalf of their respective clients. Settlement Agreement ¶ 37.

18

Unable to point to specific language in Paragraph 36 addressing asset transfers or spin-offs, Plaintiff premises its argument on ostensibly generic language in Paragraph 36 concerning "transferees" and "assigns." Citing definitions of these terms in *Black's Law Dictionary*,[46] Plaintiff contends that New News Corp is both a transferee and an assign of Old News Corp within the meaning of Paragraph 36 "because it received the newspaper assets from Old News Corp."[47] New News Corp, in opposition, contends that the proper construction of those terms as they are used in Paragraph 36 is not whether "*any* assets and liabilities, or rights and obligations" were transferred to it in the spin-off, but instead whether "the rights and obligations *under the Settlement Agreement* were transferred" to it.[48] I agree with New News Corp.

Under the logic of Plaintiff's broad interpretation of the terms "transferees" and "assigns" in Paragraph 36, the rights plan restrictions in the Settlement Agreement would apply to *any entities* to which Old News Corp transfers or assigns *any asset or liability* it ever possessed. By extension, the rights plan restrictions would then apply to any entities to which the transferees and assigns of Old News Corp thereafter transfer or assign any of their own assets or liabilities, *ad infinitum*. Parties to contracts governed by Delaware

---

[46] Pl.'s Ans. Br. 15 (quoting *Black's Law Dictionary* at 1636 (9th ed. 2009) (defining "transferee" as "[o]ne to whom a property interest is conveyed"); *id.* at 136 (defining "assign," by reference to "assignee," as "[o]ne to whom property rights or powers are transferred by another")).

[47] *Id.*

[48] Defs.' Reply Br. 6.

19

law "are free to make bad bargains,"[49] but the outcome of Plaintiff's interpretation of Paragraph 36 would lead to absurd and unfounded results that, in my opinion, "no reasonable person would have accepted when entering the contract."[50]

Examples readily come to mind demonstrating the absurdity of Plaintiff's argument. Plaintiff's interpretation would mean that were Old News Corp to sell some of its film equipment to, say, CBS Corporation, CBS would be a "transferee" of Old News Corp's assets within the meaning of the Settlement Agreement such that CBS would thereafter be bound by the rights plan restrictions of the Settlement Agreement. Similarly, under Plaintiffs' interpretation, if Old News Corp were to sell five television trucks to five different public entities, each of those entities would become subject to the rights plan restrictions of the Settlement Agreement. As these examples illustrate, Plaintiff's interpretation would paralyze Old News Corp (and any public company with which it has done or wishes to do business) from engaging in even the most modest form of asset transfers due to the risk that counterparties would unwittingly find themselves bound to the rights plan restrictions in the Settlement Agreement as a "transferee" or "assign" of Old News Corp. That is an absurd result, in my view, that no reasonable

---

[49] *Fritz v. Nationwide Mut. Ins. Co.*, 1990 WL 186448, at *5 (Del. Ch. Nov. 26, 1990); *see also Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010) ("Parties have a right to enter into good and bad contracts, the law enforces both.").

[50] *Osborn*, 991 A.2d at 1160-61 ("The parties ask us to interpret the contract, contrary to both the plain meaning of the document and logic, and to reach an absurd, unfounded result. It stretches the bounds of reason to conclude that Osborn, a college graduate and professional tax preparer, would sell her property for a mere pittance based on an undefined, unspecified, implicit term. We cannot countenance such an absurd interpretation of the contract.").

person would have accepted when signing the Settlement Agreement in order to resolve a relatively narrow breach of contract lawsuit.

In my opinion, when viewed in the context of the entire contract,[51] the only reasonable interpretation of the generic "transferees, successors and assigns" language in Paragraph 36 is the one proffered by New News Corp, *i.e.*, that this language means only that the Settlement Agreement will be binding upon the transferees, successors or assigns *of Old News Corp's rights and obligations under the Settlement Agreement*. As this Court and courts of other states have recognized, language providing that a contract is binding upon one's "transferees, successors or assigns" (or the like) is intended to bind entities that assume, by legal succession, one's rights and obligations under the contract—*not* entities to which one may transfer or assign *other* assets or liabilities.[52]

---

[51] *See Alliance*, 963 A.2d at 769.

[52] *See, e.g.*, *Natural Energy Dev., Inc. v. Shakespeare-One Ltd. P'rship*, 2013 WL 3809250, at *3 (Del. Ch. July 22, 2013) ("The phrase 'successor and/or assigns' implies an entity that succeeds to [the General Partner's] rights in a process such as a merger, or to which [the General Partner] assigns its General Partner Interest—*not* simply an entity that the limited partners install to replace [the General Partner]."); *see also Atchison Casting Corp. v. Dofasco, Inc.*, 889 F. Supp. 1445, 1458-59 (D. Kan. 1995) ("Section 4.10 of the [purchase agreement] employs boilerplate contract language to bind 'successors and assigns' of [the seller] to the terms of the agreement. In this context, the term 'successor' carries with it a legal connotation and generally accepted meaning. With reference to corporations, the term ordinarily means 'another corporation which, through amalgamation, consolidation, or other legal succession, becomes invested with rights and assumes burdens of the first corporation.' "); *Larkin v. City of Burlington*, 772 A.2d 553, 557 (Vt. 2001) ("The boilerplate language 'successors and assigns,' when referring to corporations, ordinarily applies only when another corporation, through legal succession, assumes the rights and obligations of the first corporation.").

Hypothetically, the parties could have structured a contractual bargain in the manner suggested by Plaintiff,[53] but that is not what the parties to the Settlement Agreement did. Plaintiff has identified no legal authority supporting the broad interpretation of the terms "transferees" and "assigns" it advocates here in the context of a provision like Paragraph 36. Nor has Plaintiff identified any other provision of the Settlement Agreement suggesting that the rights plan restrictions were intended to bind all counterparties to whom Old News Corp transferred an asset or liability. Additionally, there is no well-pled basis in the Complaint to infer that either signatory to the Settlement Agreement (let alone both) intended for or understood Paragraph 36 to have the unfathomably broad interpretation that Plaintiff advances here.

Thus, in my view, the rights plan restrictions of the Settlement Agreement did not automatically transfer to New News Corp under Paragraph 36 simply because Old News Corp transferred and/or assigned some of its assets and liabilities to New News Corp. Instead, the operative question is whether Old News Corp agreed to transfer or assign any of its rights or obligations under the Settlement Agreement to New News Corp when it spun-off its newspaper and publishing business. To answer that question, one must look at the contractual provisions governing that transaction.

---

[53] Had the parties intended to address asset transfers, one logically would expect to see in the Settlement Agreement some provision defining what level of asset transfer would trigger an obligation to bind the recipient of the assets to the rights plan restrictions in the Settlement Agreement, such as a sale of all or substantially all of Old News Corp's assets, *see* 8 *Del. C.* § 271(a), or a lesser threshold. No such provision is present in the Settlement Agreement.

## 2. The Rights Plan Restrictions Were Not Transferred to New News Corp Pursuant to the Separation and Distribution Agreement

The Separation and Distribution Agreement, which is also governed by Delaware law,[54] was the primary agreement governing the separation of New News Corp from Old News Corp. It provides for the transfer of specified assets and liabilities from Old News Corp to New News Corp and for Old News Corp, defined as "Remainco," to retain all assets and liabilities not expressly assumed by New News Corp:

> Pursuant to the Separation and unless otherwise set forth in this Agreement or any Ancillary Agreement, New News Corporation . . . (x) shall be the sole owner, and shall have exclusive right, title and interest in and to, all Separated Assets and (y) shall be solely liable for, and shall faithfully perform, fulfill and discharge fully in due course, all of the Separated Liabilities in accordance with their respective terms. Pursuant to the Separation and unless otherwise set forth in this Agreement or any Ancillary Agreement, Remainco . . . (x) shall be the sole owner, and shall have exclusive right, title and interest in and to, all Remainco Assets and (y) shall remain and be solely liable for, and shall faithfully perform, fulfill and discharge fully in due course, all of the Remainco Liabilities in accordance with their respective terms. Unless otherwise set forth in this Agreement or any Ancillary Agreement, from and after the Distribution, New News Corporation . . . shall be solely responsible for all Separated Liabilities and Remainco . . . shall be solely responsible for all Remainco Liabilities, regardless of when or where such Liabilities arose or arise, or whether the facts on which they are based occurred prior to, on or subsequent to the Distribution . . . .[55]

The "Separated Liabilities" assumed by New News Corp were specifically enumerated in a six-part definition, while the "Remainco Liabilities" retained by Old News Corp were

---

[54] Separation and Distribution Agreement § 9.03.

[55] *Id.* § 2.02(a)(ii).

23

defined as "the Liabilities of Remainco, other than the Separated Liabilities."[56] My analysis assumes, as the parties have done, that the rights plan restrictions in the Settlement Agreement would fall within the definition of "Liabilities"[57] rather than within the definition of "Asset"[58] under the Separation and Distribution Agreement.

The Settlement Agreement is not expressly listed as a Separated Liability and, accordingly, Plaintiff does not contend that Old News Corp's rights or obligations under the Settlement Agreement were expressly transferred or assigned to New News Corp. Rather, Plaintiff argues that the obligations under the Settlement Agreement were transferred and/or assigned to New News Corp as a "Mixed Contract."

The Separation and Distribution Agreement defines a "Mixed Contract" as "any agreement to which . . . [Old News Corp] or [New News Corp] is a party prior to the Distribution that inures to the benefit or burden of both of the Remainco Business and the Separated Business."[59] The terms "Separated Business" and "Remainco Business" are

---

[56] *Id.* § 1.01.

[57] "Liabilities" include "all debts, liabilities, obligations, [and] responsibilities . . . , whenever arising, including . . . those arising under any Contract, agreement, guarantee, commitment or undertaking[.]" *Id.*

[58] "Asset" includes "any and all of such Person's right, title and ownership interest in and to all of the property, claims, Contracts, businesses or assets (including goodwill), whether real, personal or mixed, tangible or intangible of any kind, nature and description[.]" *Id.*

[59] *Id.* § 2.02(g)(i).

24

defined, respectively, as the "business and operations" of New News Corp and the "business and operations" of Old News Corp.[60]

Under Section 2.02(g)(i) of the Separation and Distribution Agreement, a Mixed Contract that cannot be partially assigned is to be divided such that the liabilities associated with the Separated Business would be borne by New News Corp and the liabilities associated with the Remainco Business would be borne by Old News Corp. In each case, Old News Corp had the sole discretion, to be exercised in good faith, to determine how to apportion the liabilities associated with each Mixed Contract:

> Unless the Parties agree in writing otherwise or as otherwise may be provided in any Ancillary Agreement, [a Mixed Contract] *shall be assigned in part* to New News Corporation or one of its Subsidiaries, and/or to Remainco or one of its subsidiaries, as the case may be, *if so assignable*, prior to or as of the Distribution, such that each Party or its respective Subsidiaries shall be entitled to its portion of the rights and benefits thereof, as determined in the sole discretion of Remainco (to be exercised in good faith), and shall assume the related portion of any obligations thereunder and any Liabilities inuring to their respective Businesses; provided, however, that in no event shall either Party be required to assign any Mixed Contract in its entirety. *If any Mixed Contract cannot be so partially assigned to any extent*, Remainco and New News Corporation shall, and shall cause each of their respective Subsidiaries to, take such other reasonable and permissible actions to cause the following: . . . (B) the Liabilities associated with that portion of each Mixed Contract (*as determined by Remainco, in its sole discretion (to be exercised in good faith)*[)] that relates to the Separated Business to be borne by New News Corporation or a New News Corporation Subsidiary; . . . and (D) the Liabilities associated with that portion of each Mixed Contract (*as determined by Remainco, in its sole discretion (to be exercised in good*

---

[60] "Separated Business" is defined as "the business and operations conducted by the New News Corporation Group [*i.e.*, New News Corp and its subsidiaries and affiliates]," and "Remainco Business" is defined as "all businesses and operations of the Remainco Group [*i.e.*, Old News Corp and its direct and indirect subsidiaries and affiliates], other than the Separated Business." *Id.* § 1.01.

25

*faith)*[)]] that relates to the Remainco Business to be borne by Remainco or a Remainco Subsidiary[.][61]

According to Plaintiff, the Settlement Agreement constitutes a Mixed Contract that "covers, and inures to, both the newspaper [assets] [(*i.e.*, the Separated Business)] and the media assets [(*i.e.*, the Remainco Business)], because all those assets were owned by [Old] News Corp when the Settlement was made effective through the Settlement Agreement."[62] Plaintiff's theory is that Old News Corp's rights and obligations under the Settlement Agreement were assumed by New News Corp because (a) they related to the newspaper assets that constituted part of Separated Business, and (b) they could not have been partially assigned.

In opposition, New News Corp contends that the Settlement Agreement is not a Mixed Contract because it did not inure to the "benefit" or "burden" of the Separated Business of New News Corp or the Remainco Business of Old News Corp. In particular, New News Corp submits that the Settlement Agreement exists outside the universe of "Mixed Contract" agreements because it relates fundamentally to "a matter of internal affairs, regarding the relationship between Old News Corp, its directors, and its stockholders," not to the "business" or "operations" of either the Separated Business or the Remainco Business.[63] In my opinion, New News Corp's interpretation is the only

---

[61] *Id.* § 2.02(g)(i) (emphasis added).

[62] Pl.'s Ans. Br. 18.

[63] Defs.' Reply Br. 7; Tr. of Oral Arg. 132.

reasonable construction of the relevant provisions of the Separation and Distribution Agreement.

As explained above, to have qualified as a Mixed Contract, the Settlement Agreement must have inured to the benefit or burden of the "*business and operations*" of the Separated Business of New News Corp and the Remainco Business of Old News Corp. According to commonly used dictionaries,[64] the word "business" means the commercial enterprise of a company,[65] and the word "operations" means the commercial activities of a company.[66] Applying these definitions here, the contractual rights and obligations of the Settlement Agreement did not inure to the benefit or burden of Old News Corp's newspaper/publishing enterprise and activities (the Separated Business) or its broadcast/media enterprise and activities (the Remainco Business). Instead, the rights and obligations in the Settlement Agreement generally, and the stockholder rights plan restrictions specifically, concern Old News Corp's corporate governance matters.

The key terms of the Settlement Agreement reflect this reality. The consideration exchanged in that contract was the release of certain claims by Old News Corp's

---

[64] *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 738 (Del. 2006) ("Delaware courts look to dictionaries for assistance in determining the plain meaning of terms which are not defined in a contract."); *see also Nationwide Emerging Managers, LLC v. NorthPointe Hldgs., LLC*, — A.3d —, 2015 WL 1317705, at *11 (Del. Mar. 18, 2015, revised Mar. 27, 2015) (citing *Lorillard*, 903 A.2d at 738).

[65] *See Black's Law Dictionary* at 226 (defining "business" to mean "[a] commercial enterprise carried on for profit").

[66] *See New Oxford American Dictionary* at 1229 (3d ed. 2010) (defining "operation" to mean "a business organization; a company" and "an activity in which such an organization is involved").

stockholders for a promise by Old News Corp that it would not maintain a rights plan for longer than one year, subject to certain exceptions, without stockholder approval. That consideration had nothing to do with the commercial enterprise or commercial activities of Old News Corp in 2006, nor did it have anything to do with the commercial enterprise or commercial activities of the Separated Business or the Remainco Business in 2013. The Settlement Agreement instead limited the situations in which the Old News Corp board could unilaterally adopt or extend a rights plan and granted to Old News Corp stockholders the right to vote on board action in other situations. As such, the Settlement Agreement involved "matters that pertain to the relationships among or between the corporation and its officers, directors, and shareholders" and thereby implicated Old News Corp's internal affairs and corporate governance.[67] In this regard, the Settlement Agreement is analogous to Old News Corp's charter or bylaws, which Plaintiff does not contend were or should have been assumed by New News Corp as a Mixed Contract or otherwise.[68] Indeed, the Separation and Distribution Agreement separately addresses

---

[67] *See VantagePoint Venture P'rs 1996 v. Examen, Inc.*, 871 A.2d 1108, 1113 (Del. 2005); *see also McDermott Inc. v. Lewis*, 531 A.2d 206, 214 (Del. 1987) ("The internal affairs doctrine . . . governs the choice of law determinations involving matters *peculiar* to corporations, that is, those activities concerning the relationships *inter se* of the corporation, its directors, officers and shareholders.").

[68] Tr. of Oral Arg. 93. Although not controlling on the interpretation of the Separation and Distribution Agreement, certain provisions of the Delaware General Corporation Law seem to reflect a similar distinction between the commercial activities of a corporation (*i.e.*, its business) and the internal governance of a corporation (*i.e.*, its affairs). *See, e.g.*, 8 *Del. C.* § 141(a) ("The *business* and *affairs* of every corporation . . . shall be managed by or under the direction of a board of directors[.]" (emphasis added)); 8 *Del. C.* § 102(b)(1) ("[T]he certificate of incorporation may also contain . . . [a]ny provision for the management of the *business* and for the conduct of the *affairs* of the

New News Corp's charter and bylaws, which must be in effect as a condition to the spin-off.[69]

In sum, the only reasonable way to conceive of Old News Corp's obligations under the Settlement Agreement concerning rights plans are as internal governance obligations and not as obligations that inure to the burden of New News Corp's newspaper/publishing "business and operations" or Old News Corp's broadcast/media "business and operations." For this reason, the Settlement Agreement does not constitute a Mixed Contract as defined in the Separation and Distribution Agreement. Instead, it constitutes a Remainco Liability that Old News Corp retained pursuant to the Separation and Distribution Agreement. Thus, as a matter of law, Plaintiff has failed to state a claim that New News Corp is bound by the Settlement Agreement.

Finally, even if Plaintiff were correct that the Settlement Agreement constitutes a Mixed Contract within the meaning of the Separation and Distribution Agreement, it is still not reasonably conceivable that New News Corp is subject to the rights plan restrictions of the Settlement Agreement. Section 2.02(g)(i) of the Separation and

---

corporation[.]" (emphasis added)); 8 *Del. C.* § 109(b) ("The bylaws may contain any provision . . . relating to the *business* of the corporation, the conduct of its *affairs*, and its rights or powers or the rights or powers of its stockholders, directors, officers, or employees." (emphasis added)).

[69] Separation and Distribution Agreement § 3.03(q) ("The obligation of Remainco to consummate the Distribution is subject to the prior or simultaneous satisfaction . . . of the following conditions: . . . (q) the Certificate of Incorporation and the By-laws of New News Corporation, each in substantially the form filed with [the] Registration Statement, shall be in effect at or prior to the Distribution."). The Separation and Distribution Agreement defines "Certificate of Incorporation" and "By-laws" by reference to exhibits to New News Corp's Form 10 Registration Statement filed with the SEC. *Id.* § 1.01.

Distribution Agreement expressly provides Remainco (*i.e.*, Old News Corp) with the *sole discretion*, to be exercised in good faith, to determine which portion of a Mixed Contract should be borne by New News Corp and which portion should be borne by Old News Corp. Plaintiff has not alleged that, in violation of Section 2.02(g)(i), Old News Corp failed to exercise good faith in determining not to transfer any of the rights or obligations of the Settlement Agreement to New News Corp.[70] Thus, absent an express provision to the contrary in the Separation and Distribution Agreement or any of the ancillary transaction agreements—and Plaintiff has not presented one—the Settlement Agreement was not transferred or partially assigned to New News Corp.[71]

---

[70] Plaintiff's allegations of bad faith relate solely to the Individual Defendants' alleged breach of fiduciary duty for violating the Settlement Agreement, Compl. ¶¶ 83-85, not to the division of Mixed Contract liabilities undertaken by Old News Corp, which is not even a party to this litigation.

[71] In a terse footnote, Plaintiff halfheartedly asserts that, at a minimum, it is reasonably conceivable that New News Corp "impliedly" agreed to assume the rights plan restrictions of the Settlement Agreement because New News Corp was a successor to Old News Corp's newspaper and publishing business. Pl.'s Ans. Br. 19 n.8. I disagree. The detailed provisions of the Separation and Distribution Agreement, particularly Section 2.02, do not reasonably lend themselves to an interpretation that New News Corp impliedly agreed to assume any assets or liabilities other than those expressly specified as Separated Assets, Separated Liabilities, and, as applicable, Mixed Contracts. To read those contract provisions as Plaintiff advocates would have the Court interfere with Old News Corp and New News Corp's contractual bargain without justification. *See Salamone v. Gorman*, 106 A.3d 354, 370 (Del. 2014) ("[W]hen parties have ordered their affairs voluntarily through a binding contract, Delaware law is strongly inclined to respect their agreement, and will only interfere upon a strong showing that dishonoring the contract is required to vindicate a public policy interest even stronger than freedom of contract."); *see also* Leo E. Strine, Jr., *Regular (Judicial) Order as Equity: The Enduring Value of the Distinct Judicial Role*, 87 Temp. L. Rev. 99, 106 (2014) ("[C]onsistent adherence to settled interpretive principles focusing closely on the meaning of the contractual words . . . allows all players a fair opportunity to make mutually beneficial bargains on predictable terms.").

For the reasons explained above, I conclude as a matter of law that the Settlement Agreement did not prevent Old News Corp from spinning off some of its assets to a new public corporation free from the rights plan restrictions in the Settlement Agreement and that it permissibly did so under the terms of the Separation and Distribution Agreement. Accordingly, Count I, which seeks a declaratory judgment that New News Corp is bound by the terms of the Settlement Agreement, is dismissed for failure to state a claim for relief.

### B.    Counts II-IV Fail to State a Claim Because New News Corp is Not Bound by the Settlement Agreement

In Count II, Plaintiff alleges that New News Corp "breach[ed] the Settlement Agreement by extending the [Rights Plan] during a nine-month Interim Period, without stockholder approval, and without any circumstance existing that, under the terms of the Settlement Agreement, would allow adoption or extension of a [Rights Plan] without stockholder approval during an Interim Period."[72]  As Defendants correctly argue,[73] Plaintiff cannot allege a reasonably conceivable basis in which New News Corp breached the Settlement Agreement without first establishing that New News Corp is actually bound by that contract.  For the reasons I outlined in dismissing Count I above, New News Corp is not bound by the Settlement Agreement.  Thus, without resolving whether

---

[72] Compl. ¶ 77.

[73] Defs.' Op. Br. 19.

31

or not the one-year extension of the Rights Plan in June 2014 was permissible under the Vote Exception of the Settlement Agreement,[74] Count II fails to state a claim for relief.

In Count III, Plaintiff alleges that the Individual Defendants acted in bad faith when they "deprive[d] the stockholders of their right to vote on [Rights Plan] provisions under the Settlement Agreement."[75] Thus, according to Plaintiff, the Individual Defendants breached their fiduciary duties by "caus[ing] [New] News Corp to violate its contractual obligations."[76]

The factual predicate for Count III is that New News Corp is bound by the Settlement Agreement, which Plaintiff has failed to establish. Plaintiff does not advance any breach of fiduciary duty theory independent from the purported breach of the Settlement Agreement. For instance, Plaintiff does not allege that, when the Individual Defendants extended the Rights Plan in 2014, they breached their fiduciary duties by acting unreasonably,[77] in bad faith,[78] in a self-interested manner,[79] or on an uninformed basis.[80] Count III is thus dismissed under Court of Chancery Rule 12(b)(6).

---

[74] Pl.'s Ans. Br. 20-30.

[75] Compl. ¶ 83.

[76] *Id.*; *see also id.* ¶ 85 ("Rather than honor [New] News Corp's contractual obligations, the Defendants have broken their promise and breached their fiduciary duties.").

[77] *See Versata Enters., Inc. v. Selectica, Inc.*, 5 A.3d 586, 599-600 (Del. 2010); *see also Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946 (Del. 1985).

[78] *See In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 67 (Del. 2006).

[79] *See Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984).

[80] *See UniSuper*, 2005 WL 3529317, at *9-10.

Count IV of the Complaint seeks to have the Court reform the Settlement Agreement because the parties to that contract

> mistakenly believed the language of the [Vote Exception] would apply only in situations where a stockholder was rapidly acquiring large blocks of [New] News Corp stock with the intention of affecting control of [New] News Corp's management and was doing so in such a way that the Board would not have time to seek a stockholder vote on the adoption of a new [rights plan] or the extension of an existing one.[81]

Put another way, Plaintiff alleges that the parties to the Settlement Agreement "never intended the exception to be triggered where a stockholder filing on a Schedule 13G and expressly disavowing any intent to affect management of [New] News Corp established a position in [New] News Corp stock more than 6 months prior to the expiration of the [Rights Plan]."[82]

As the factual predicate of its reformation claim, Plaintiff must first establish that New News Corp is bound by the Settlement Agreement.[83] For the reasons discussed above, New News Corp is not bound by the Settlement Agreement as a matter of law. Thus, Count IV must be dismissed for failure to state a claim.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.

**IT IS SO ORDERED**.

---

[81] Compl. ¶ 91.

[82] *Id.*

[83] *See MetCap Sec. LLC v. Pearl Senior Care, Inc.*, 2007 WL 1498989, at *10 (Del. Ch. May 16, 2007) ("Reformation is available, perhaps subject to certain exceptions not present here, only to parties to the contract.").