# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| BOBCAT NORTH AMERICA, LLC, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N19C-12-168 |
| | ) | PRW CCLD |
| INLAND WASTE HOLDINGS, | ) | |
| BART A. BEGLEY, | ) | |
| MONTGOMERY M. DAVIDSON, | ) | |
| AND ROBERT A. SMITH | ) | |
| Defendants. | ) | |

Submitted: May 19, 2020
Decided: August 17, 2020

## MEMORANDUM OPINION AND ORDER

*Upon Defendants Inland Waste Holdings, Bart A. Begley, Montgomery M. Davidson, and Robert A. Smith's Motion to Dismiss,*
**DENIED.**

Joel Friedlander, Esquire, Christopher M. Foulds, Esquire, Christopher P. Quinn, Esquire, FRIEDLANDER & GORRIS, P.A, Wilmington, Delaware; Dylan P. Kletter, Esquire, BROWN RUDNICK LLP, Hartford, Connecticut, *Attorneys for Plaintiff Bobcat North America, LLC.*

David S. Eagle, Esquire, Sean M. Brennecke, Esquire, KLEHR HARRISON HARVEY BRANZBURG LLP, Wilmington, Delaware; William T. Hill, Esquire, Gregory R. Sellers, Esquire, KLEHR HARRISON HARVEY BRANZBURG LLP, Philadelphia, Pennsylvania, *Attorneys for Defendants Inland Waste Holdings, LLC, Bart A. Begley, Montgomery M. Davison, and Robert A. Smith.*

**WALLACE, J.**

This dispute arises over the interpretation of a unit purchase agreement (the "UPA"). Plaintiff Bobcat North America, LLC have brought specific suit[1] in this Court seeking to recover amounts it claims it is owed from Defendants Inland Waste Holdings, LLC, Bart A. Begley, Montgomery M. Davison, and Robert A. Smith (collectively, "Defendants") for a working capital adjustment. On December 18, 2019, Bobcat filed a complaint (the "Complaint"), alleging that Defendants breached their payment obligations under the UPA.

Before the Court is Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction (the "Motion"). Having considered the record and the parties' arguments, the Court **DENIES** this Motion to Dismiss.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2016, Bobcat acquired a group of waste-management companies from Defendants (the "Transaction").[2] To consummate the Transaction, Bobcat and Defendants entered into the UPA on May 18, 2016.[3]

---

[1] Bobcat has another pending suit in this Court against these same Defendants and arising from the same UPA. *See Bobcat North America, LLC v. Inland Waste Holding, LLC*, 2019 WL 1877400 (Del. Super. Ct. Apr. 26, 2019) (deciding Bobcat's motion for partial summary judgment in the earlier-filed still-pending suit).

[2] Compl. ¶ 17.

[3] *Id.*

## A. THE UPA'S WORKING CAPITAL AND DISPUTE PROVISIONS

The UPA establishes the price that Bobcat paid for Defendants' equity in the companies, subject to certain post-closing adjustments.[4] Under the UPA, Bobcat paid the Defendants approximately $64.9 million for the companies acquired in the Transaction, subject to certain post-closing adjustments, including an adjustment for working capital reflected in the final closing statement (the "Final Closing Statement").[5]

As part of the consideration for the transaction, the parties specifically agreed in UPA Section 2.5(b) that the Defendants would deliver the companies to Bobcat with adequate working capital in the amount of $3,320,000.[6] Specifically, the parties agreed the "Adjusted Net Working Capital Adjustment" shall be "equal to the dollar amount that the Closing Adjusted Net Working Capital, as set forth on the Final Closing Statement, is less than or greater than $3,320,000.00."[7]

The UPA also contained a provision specifying the agreed procedure for the parties to resolve any dispute related to the Final Closing Statement.[8] In Section

---

[4]   Compl. Ex. A ("UPA") § 2.1.

[5]   Compl. ¶ 18.

[6]   *Id.* ¶ 19.

[7]   UPA § 2.5(b).

[8]   Compl. ¶ 20.

2.5(h), Defendants agreed to have a CPA firm act as the exclusive decider of any dispute related to the Final Closing Statement.[9]

Under UPA Section 2.6(a), Defendants would pay the dollar amount of any negative working capital adjustment within five business days. That payment would be made to Bobcat by a Members' Representative, on behalf of the Members and Inland.[10] And under UPA Section 6.16, Defendants were required to take such actions as Bobcat reasonably requested to more effectively consummate the parties' intent and purpose under the UPA and the transactions contemplated thereby.[11]

In Section 9.2 of the UPA, Bobcat and Defendants agreed to arbitrate all disputes "as to the interpretation of any provision of, or the performance of obligations under" the UPA, with two exceptions.[12] As for the first exception (the "Section 9.2. Exception"), Section 9.2 provides that "disputes or disagreements regarding the Final Closing Statement . . . shall be resolved exclusively pursuant to Section 2.5," which is the section that sets forth the procedures for obtaining the

---

[9]  *Id.* ¶ 20.

[10]  *Id.* ¶ 75.

[11]  *Id.* ¶ 76.

[12]  UPA § 9.2.

opinion of an independent expert accountant.[13] As for the second exception (the "Section 9.6 Exception"), Section 9.6 of the UPA provides, in relevant part:

> Notwithstanding anything to the contrary in this Article 9 . . .
>
> (c) Exclusivity; Significant Claims. Except as otherwise expressly set forth in a written agreement between Buyer and the Members' Representative, this Article 9 sets forth the exclusive method of resolving any Dispute; provided, however, that this Article 9 shall not apply with respect to any Dispute where a reasonable, good faith estimate of the amount in controversy, excluding attorneys' fees and expenses and punitive damages, exceeds $3,000,000.[14]

For claims that do not fall under the Section 9.2 Exception or the 9.6 Exception, the arbitration agreement in "Article 9 sets forth the exclusive method of resolving any Dispute."[15]

Finally, UPA Section 10.6 provides:

> This Agreement shall be governed by the laws of the State of Delaware, excluding any choice of law rules that may direct the application of the laws of another jurisdiction. Subject to the provisions of Article 9, each Party stipulates that any Dispute shall be commenced and prosecuted in its entirety in, and consents to the exclusive jurisdiction and proper venue of, any federal or state court located within New Castle County, Delaware, and each Party consents to personal and subject matter jurisdiction and venue in such courts and waives and relinquishes all right to attack the suitability or convenience of such venue or forum by reason of their present or future domiciles, or by any other reason. The Parties acknowledge that all directions issued by the forum court, including all injunctions and other decrees, will be binding and

---

[13] *Id.*

[14] *Id.* § 9.6.

[15] *Id.* § 9.6(c).

enforceable in all jurisdictions and countries. Each Party waives any right to trial by jury with respect to any Dispute.[16]

## B. THE PARTIES' PRESENT DISPUTE

On September 15, 2016, Bobcat delivered its Preliminary Closing Statement to the Defendants pursuant to Section 2.5(e) of the UPA.[17] On November 11, 2016, the Defendants delivered their Closing Statement Objection to Bobcat pursuant to Section 2.5(f) of the UPA.[18] On November 28, 2016, Bobcat delivered its Response to the Defendants' Closing Statement Objection pursuant to Section 2.5(g) of the UPA.[19] In its Response, Bobcat proposed that the Closing Statement Dispute be resolved by a nationally recognized firm of public accountants in accordance with Section 2.5(h)(ii) of the UPA.[20] On December 21, 2016, Bobcat and Defendants jointly engaged an accounting firm, CohnReznick LLP, to act as an independent expert under Section 2.5(h).[21] CohnReznick delivered an opinion concerning the working capital adjustments to the parties on April 30, 2017, opining that Bobcat

---

[16] *Id.* § 10.6.

[17] Compl. ¶ 26.

[18] *Id.* ¶ 27.

[19] *Id.* ¶ 28.

[20] *Id.* ¶ 29.

[21] *Id.* ¶ 31.

was entitled to a net adjustment in the amount of $2,653,420.86.[22] On May 1, 2017, Bobcat, invoking UPA Section 2.6, demanded that Defendants pay that amount within five business days.[23]

On May 19, 2017, Bobcat filed an action in the District Court of Travis County, Texas, seeking to confirm CohnReznick's opinion as an arbitration award.[24] Bobcat argued that CohnReznick's opinion constituted an arbitration award, and that judgment could be entered thereon by the Texas court under the Texas Arbitration Act.[25] The District Court ruled that CohnReznick's opinion was not an "arbitration" under the Texas Arbitration Act.[26]

Bobcat appealed the District Court's decision to the Texas Court of Appeals for the Third District, which affirmed the District Court's decision.[27] The Court of Appeals concluded that Section 2.6 sets forth the payment obligation following the expert accountant proceedings of Section 2.5, and that Section 9.2's mandatory

---

[22] *Id.* ¶¶ 44–45.

[23] *Id.* ¶ 4.

[24] *Id.* ¶ 50.

[25] *Id.*

[26] *Id.* ¶ 51.

[27] *Id.* ¶ 52, Ex. H, 9–10.

arbitration provisions apply to Bobcat's claim for payment under Section 2.6.[28] The appellate court held as follows: "Construing Sections 9.2, 2.5, and 2.6 together, we conclude that the expert's determination alone is not enforceable as an arbitration award because arbitrators must decide the parties' payment obligations."[29] Enforcing the UPA's mandatory arbitration provisions, the Court of Appeals affirmed the Texas trial court's decision, because "Bobcat never invoked arbitration under Section 9.2 to order [Defendants] to pay the amounts adjusted by CohnReznick."[30]

Defendants have since refused to pay the $2,653,420.86, plus interest, owed to Bobcat. According to Bobcat, as a result of Defendants' failure and refusal to pay Bobcat the amount of the net adjustment, Bobcat is entitled to an award of between $3,105,629.23 and $3,142,141.64.[31] This proposed award is comprised of the $2,653,420.86 based on CohnReznick's "final" determination, as well as prejudgment interest accruing from the date payment was due from Defendants to Bobcat on May 5, 2017—the date five business days after CohnReznick's

---

[28] *Id.*

[29] Compl. ¶ 52, Ex. H, 9.

[30] Compl. ¶ 52, Ex. H, 9-10.

[31] Compl. ¶ 55.

determination per Section 2.6(a) of the UPA—in the amount of $452,208.37 on a simple basis and $488,720.78 on a compound basis.[32]

## II. PARTIES' CONTENTIONS

### A. BOBCAT'S CLAIMS

In Count I of the Complaint, Bobcat alleges that Defendants breached their obligations under Section 2.6 and Section 6.16 of the UPA by failing to pay make payment to Bobcat. In Count II, Bobcat further alleges that it is entitled to a declaratory judgment "that Defendants have a joint and several obligation pursuant to Section 2.6 of the UPA to pay Bobcat $2,653,420.86 based on CohnReznick's 'final' determination."[33] Bobcat asserts that this Court has jurisdiction pursuant to the Delaware forum-selection clause, Section 10.6.

In opposing this motion to dismiss, Bobcat argues that the Section 9.6 Exception applies because the amount in controversy exceeded $3,000,000 at the time of filing the Complaint. Bobcat says that according to the UPA's plain language, this amount should include prejudgment interest. With the inclusion of prejudgment interest, Bobcat claims the amount in controversy $3,105,629.23 on a simple basis or $3,142,141.64 on a compound basis.

---

[32] *Id.*

[33] Compl. ¶ 85.

**B. DEFENDANTS' MOTION**

In the Motion, Defendants argue that since the Texas Court of Appeals has already determined that "Arbitrators Must Decide" Bobcat's claims in this action, the doctrines of *res judicata*, collateral estoppel and full faith and credit require this Court to honor the Texas Appellate Court's decision and dismiss the complaint. In the alternative, Defendants argue if this Court decides those doctrines do not apply, then this Court should find that the UPA requires Bobcat's claims to be arbitrated.

In their reply to Bobcat's answering brief, Defendants argue that the "amount in controversy" does not have to be measured at the time the Complaint was filed and that the Court should be guided by the public policy of Delaware that favors arbitration. Defendants argue that the amount should be calculated at the time that the Motion was filed rather than at the time that the Complaint was filed. Finally, Defendants explain that because they have sent Bobcat a check after Bobcat filed the Complaint, the amount in controversy is now below the $3,000,000 threshold.

### III. STANDARD OF REVIEW

Under Superior Court Civil Rule 12(b)(1), the Court must dismiss an action for lack of subject matter jurisdiction if it appears from the record that the Court does

not have jurisdiction over the claims.[34] "The burden of establishing the Court's subject matter jurisdiction rests with the party seeking the Court's intervention."[35] "When reviewing a claim for lack of subject matter jurisdiction, the Court 'need not accept Plaintiff's factual allegations as true and is free to consider facts not alleged in the complaint.'"[36] One reason why the Court might lack subject matter jurisdiction is that the parties have agreed to arbitrate the dispute.[37] "[A] Rule 12(b)(1) motion will be granted if the parties contracted to arbitrate the claims asserted in the complaint."[38]

---

[34] Del. Super. Ct. Civ. R. 12(b)(1); Del. Super. Ct. Civ. R. 12(h)(3); *Airbase Carpet Mart, Inc. v. AYA Assocs., Inc.*, 2015 WL 9302894, at *2 (Del. Super. Ct. Dec. 15, 2015), *aff'd* 2016 WL 4938890 (Del. Sept. 16, 2016).

[35] *State ex rel. French v. CVS Health Corp.*, 2019 WL 4668353, at *4 (Del. Super. Ct. Sept. 24, 2019) (citations and internal quotation marks omitted); *Airbase Carpet Mart*, 2015 WL 9302894, at *2.

[36] *Ramunno & Ramunno, P.A. v. Potter*, 2016 WL 2982367, at *2 (Del. Super. Ct. May 11, 2016) (quoting *Appriva Shareholder Litigation Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1285 n.14 (Del. 2007)).

[37] *See, e.g., Li v. Standard Fiber, LLC*, 2013 WL 1286202, at *4 (Del. Ch. Mar. 28, 2013) ("A Delaware court lacks subject matter jurisdiction to resolve disputes that litigants have contractually agreed to arbitrate[,] because arbitration provides an adequate remedy.") (alteration in original) (footnote and internal quotation marks omitted).

[38] *Id.; Glazer v. Alliance Beverage Distrib.Co., LLC*, 2017 WL 822174, at *1 (Del. Ch. Mar. 2, 2017) ("Delaware courts lack subject matter jurisdiction to resolve disputes that litigants have contractually agreed to arbitrate.") (internal quotation marks omitted).

## IV. DISCUSSION

The parties do not dispute the relevant facts and framework under the UPA. Both sides agree that if they were unable to resolve their dispute concerning the content of the Final Closing Statement and the amount of Adjusted Net Working Capital Adjustment, then such adjustment was to be determined by the CPA Firm pursuant to Section 2.5 of the UPA. The parties agree that the Section 9.2 Exception is not applicable here because the dispute over the Final Closing Statement has already been "resolved exclusively" by CohnReznick as the CPA Firm pursuant to the dispute resolution procedures set forth in Section 2.5 of the UPA.

The only question before this Court is whether, under the Section 9.6 Exception, the amount in controversy, exclusive of punitive damages and attorneys' fees and expenses, exceeded $3,000,000. If it did not, the claim must be arbitrated. If it did exceed $3,000,000, then the Section 9.6 Exception applies. If the Section 9.6 Exception applies, then the doctrines of *res judicata*, collateral estoppel, and full faith and credit do not bar Bobcat's claims and the claim must be litigated in a court located in New Castle County, Delaware.

Defendants argue that given the lack of binding authority on how to determine the amount in controversy, this Court should be guided by Delaware's strong public

policy in favor of arbitration, and should adhere to the Supreme Court's directive to resolve any doubts in favor of arbitration.[39]

It is well-settled in Delaware that "[w]hen parties to an agreement decide that they will submit their claims to arbitration, Delaware courts strive to honor the reasonable expectations of the parties and ordinarily resolve any doubt as to arbitrability in favor of arbitration."[40] That said, arbitration is a mechanism of dispute resolution created by contract.[41] So an arbitration clause, no matter how broadly construed, can extend only so far as those series of obligations set forth in the underlying agreement.[42] And no judicial policy favoring alternate dispute resolution mechanisms—like arbitration—can trump basic principles of contract interpretation.[43]

---

[39] *See Parfi Hldg. AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 155–56 (Del. 2002).

[40] *Id.*

[41] *Id.* at 156; *SBC Interactive, Inc. v. Corporate Media Partners*, 714 A.2d 758, 761 (Del. 1998) ("A court will not compel a party to arbitrate . . . absent a clear expression of such an intent.").

[42] *See Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1516 (10th Cir. 1995); ("A dispute within the scope of the contract is still a condition precedent to . . . involuntary arbitration.") (citation omitted); *see also Ford v. NYLCare Health Plans of the Gulf Coast, Inc.*, 141 F.3d 243, 250 (5th Cir. 1998) (A claim "is arbitrable if it is 'so interwoven with the contract that it could not stand alone, but is not arbitrable if it is completely independent of the contract and could be maintained without reference to a contract.'") (quoting *X.L. Ins. Co. Ltd v. Harford Accident & Indem. Co.*, 918 S.W.2d 687, 689 (Tex. App. 1996)).

[43] *Parfi*, 817 A.2d at 156.

The phrase "amount in controversy" is unambiguous; it is, indeed, a "legal term of art"[44] that would have to be modified from its general understanding to reach Defendant's suggested read. But this Court cannot distort the UPA language under the guise of construing it to grant Defendants a non-existent contract right.[45]

Here, UPA Section 9.6(c), titled "Significant Claims," expressly defines the components to be excluded from the calculation of a disputed sum for the purposes of assessing the $3,000,000 jurisdictional threshold. Specifically, the Section 9.6 Exception carves out claims from arbitration where "a reasonable, good faith estimate of the amount in controversy, excluding attorneys' fees and expenses and punitive damages, exceeds $3,000,000."[46] No doubt, if the parties had intended to also exclude interest from an "amount in controversy" calculation under Section 9.6(c), the parties would have expressly specified so.[47]

---

[44] *See Majkowski v. Am. Imaging Mgmt. Servs., LLC*, 913 A.2d 572, 592 (Del. Ch. 2006) (interpreting the phrase "indemnify and hold harmless" as unambiguous because the phrase is a "legal term of art"); *see also Penton Business MediaHoldings, LLC v. Informa PLC*, 2018 WL 3343495, at *12 (Del. Ch. July 9, 2018) ("[W]here a word has attained the status of a term of art and is used in a technical context, the technical meaning is preferred over the common or ordinary meaning.") (internal quotes omitted).

[45] *See Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006) ("Absent some ambiguity, Delaware courts will not distort or twist contract language under the guise of construing it.").

[46] UPA § 9.6(c).

[47] The interpretive canon *expressio unius est exclusio alterius*—the explicit mention of one thing is the exclusion of another—favors this read. *See Delmarva Health Plan, Inc. v. Aceto*, 750 A.2d 1213, 1216 n.12 (Del. Ch. 1999) (observing that this "venerable interpretative maxim" is one

In a footnote, Defendants cite to the diversity jurisdiction requirements set forth in 28 U.S.C. § 1332 to support that under the UPA the "amount in controversy" should not include interest. Not so. Unlike the Section 9.6 Exception, the federal diversity requirements expressly exclude "interest" from the calculation of the amount in controversy:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs . . . .[48]

Similarly, Delaware law provides "[t]he complaint also must contain a statement of the amount in controversy exclusive of interest and costs . . . ."[49]

To give meaning to the words "exclusive of interest," the preceding statutory terms "matter in controversy" and "amount in controversy" must be construed to encompass interest.[50] And so, if the Defendants intended to exclude "interest" from

---

"more commonly applied in the statutory, rather than contractual, interpretative process.").

[48] 28 U.S.C. § 1332(a) (2019).

[49] Del. Super. Ct. Civ. R. 125.

[50] *See TRW Inc. v. Andrews,* 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (internal quotation marks omitted); *see also Taylor v. Diamond State Port Corp.,* 14 A.3d 536, 540 (Del. 2011) ("To the extent possible, we construe statutory language against surplusage, and assume the General Assembly used particular text purposefully."); *State v. Lewis,* 797 A.2d 1198, 1201 (Del. 2002) (A canon of statutory interpretation may be "equally applicable to an interpretation of a court rule.").

the calculation of the "amount in controversy" in Section 9.6, then they could and should have expressly said so in the same manner as Congress has in 28 U.S.C. § 1332 and this Court has in its rules. Instead, the parties expressly chose to only exclude punitive damages and attorneys' fees and expenses.

Lastly, Defendants argue that because they sent Bobcat a check after Bobcat filed the Complaint, the amount in controversy is now below the $3,000,000 threshold. Defendants argue that the amount should be calculated at the time that the Motion was filed rather than at the time that the Complaint was filed. Subsequent to the filing of the instant complaint, the Defendants sent Bobcat a check for $371,166.97. And Defendants expressly conceded that Bobcat was entitled to a minimum of $61,257.97 of prejudgment interest.

Where federal courts have interpreted their "matter in controversy" requirements, the amount in controversy is determined as of the date of the case's filing.[51] The Supreme Court of Texas has also held that subsequent events that alter the amount in controversy never strip the court of jurisdiction so long as the amount

---

[51] *Auto-Owners Insurance Co. v. Stevens & Ricci, Inc.*, 835 F.3d 388, 395–96 (3d Cir. 2016) ("In making that assessment, '[t]he temporal focus of the court's evaluation . . . is on the time that the complaint was filed.'. . . Subsequent events cannot reduce the amount in controversy so as to deprive the district court of jurisdiction. . . ."); *GlobeRanger Corp. v. Software AG U.S., Inc.*, 836 F.3d 477, 488–89 (5th Cir. 2016) ("It would be inefficient for the court, as well as for litigants, if the power of the court to decide a case could exist at the outset, but later disappear based on changed circumstances.").

in controversy at the time of the complaint's original filing conferred the court jurisdiction.[52]

And other states have also interpreted "amount in controversy" to mean that amount is fixed at the time of the filing of a civil complaint for jurisdiction purposed. In *Mainer v. City of Spokane*, the Washington Court of Appeals specifically noted the sum pled, including prejudgment interest through the date of filing, as the amount in controversy.[53] Similarly, in *Preferred Risk Mut. Ins. Co. v. Johnson*, the Supreme Court of Mississippi described the failure to pay a known, liquidated amount owed under a contract as a separate injury: the opportunity cost to the wronged party, which lacked the ability to make use of the funds owed.[54] Accordingly, this Court finds that events occurring subsequent to the filing of Bobcat's complaint meant to reduce the amount in controversy do not divest the Court of jurisdiction.

---

[52] *Continental Coffee Products Co. v. Cazarez*, 937 S.W.2d 444, 449 (Tex. 1996).

[53] *Mainer v. City of Spokane*, 2015 WL 7736934, at *3 (Wash. Ct. App. Dec. 1, 2015) ("The inclusion of prejudgment interest up to the time [plaintiff] filed her action is all that can be included in the 'original amount in controversy' for purposes of determining our jurisdiction."), *rev. denied*, 377 P.3d 728 (2016).

[54] *Preferred Risk Mut. Ins. Co. v. Johnson*, 730 So.2d 574, 577 (Miss. 1998).

## V. CONCLUSION

Bobcat has adequately pleaded that Defendants failed to pay a known sum due as a separate injury.[55] At the time of filing here, the value of Bobcat's claims—exclusive of attorneys' fees, expenses, and punitive damages—was indisputably over $3 million. And so, this Court has subject matter jurisdiction over Bobcat's claims.

Defendants' Motion to Dismiss is, therefore, **DENIED** as to all claims.

**IT IS SO ORDERED.**

Paul R. Wallace, Judge

Original to Prothonotary,

cc:    All Counsel via File and Serve

---

[55] *Id.*