**DELMARVA HEALTH PLAN, INC., a foreign corporation, Plaintiff,**

v.

**Marie L. ACETO, Defendant.**

**Civil Action No. 17479.**

Court of Chancery of Delaware, New Castle County.

Submitted: Nov. 19, 1999.

Decided: Nov. 22, 1999.

Edward A. Tarlov, William D. Sullivan, William F. Taylor, of Elzufon & Austin, Wilmington, Delaware, for Plaintiff.

Jeffrey K. Martin, of Jeffrey K. Martin, P.A., Wilmington, Delaware, for Defendant.

## OPINION

STRINE, Vice Chancellor.

Defendant Marie Aceto has a life-threatening illness and may not survive without a lung transplant. Aceto has a health insurance policy from plaintiff Delmarva Health Plan ("DHP"). DHP filed this action seeking a declaration that it had no duty to cover Aceto's lung transplant treatment. In support of that contention, DHP asserts that because Aceto's policy provides coverage for kidney, bone marrow, and cornea transplants, it implicitly excludes coverage for all other transplants.

In this opinion, I conclude that Aceto is entitled to coverage for a lung transplant. Under her DHP policy, she is covered for medically necessary, non-experimental, surgical procedures. A lung transplant fits squarely within these definitions. The fact that the policy affirmatively covers three types of transplants does not exclude other transplants for several reasons. First, a lung transplant fits within the plain language of covered services and the argument that the contract implicitly excludes coverage otherwise mandated by the contract's clear terms is a strained reading disrespectful of the contract's text. Second, where the policy limits coverage for otherwise covered services, it does so explicitly either by including the excluded items in the policy's item "Exclusions" section or by indicating that the policy's coverage for particular services "is limited to" certain defined circumstances or in certain defined ways. No such limitation is included in the contract for lung transplant services. Finally, the policy was drafted by DHP and any ambiguity in its terms must be construed against DHP.

For all these reasons, I grant Aceto's motion for summary judgment and declare that Aceto is entitled to coverage for lung transplant treatment. DHP's cross-motion for summary judgment is, accordingly, denied.[1]

## I.

This matter comes before me on motions for cross-summary judgment. There are no factual disputes between the parties and the resolution of the motion turns solely on the interpretation of the policy, which was concededly drafted exclusively by DHP.

In deciding this matter, I apply the familiar summary judgment standard[2] and the familiar principles of insurance contract construction articulated by our Supreme Court:

> As a general rule, ... an insurance contract is construed strongly against the insurer, and in favor of the insured, because the insurer drafted the language that is interpreted. This rule is not applicable, however, unless there is some ambiguity in the policy language; in other words, if the language is clear and unambiguous a Delaware court will not destroy or twist the words under the guise of construing them. Moreover, when the language of an insurance contract is clear and unequivocal, a party will be bound by its plain meaning because creating an ambiguity where none exists could, in effect, create a new contract with rights, liabilities and duties to which the parties had not assented. And an ambiguity exists when the language in a contract permits two or more reasonable interpretations.[3]

---

1. Shortly after this case was filed, I held an office conference with the parties to discuss their joint request for expedited scheduling of this motion. During that conference, I questioned whether this court had subject matter jurisdiction. It soon became apparent that this action was filed by DHP in advance of an anticipated action by Aceto seeking an affirmative injunction requiring DHP to provide coverage on a contingent basis until a final decision on the merits could be provided. Without such contingent coverage, Aceto's chances of obtaining a spot on a lung transplant list were severely compromised. This satisfied me that there was a basis for equitable jurisdiction. After a full airing of both sides' views and guidance from the court, the parties agreed to a stipulated injunction providing Aceto with interim coverage and to a

prompt schedule for the resolution of this motion. In this and other respects, counsel for both parties are to be commended for their cooperation and collegiality. While counsel zealously advanced their clients' respective interests, they worked together to fashion an interim order mindful of Aceto's pressing needs. This speaks well of them, and in particular of DHP's counsel (and his client).

2. *Phillips Home Builders, Inc. v. Travelers Ins. Co.*, Del.Supr., 700 A.2d 127, 129 (1997).

3. *Hallowell v. State Farm. Mut. Auto. Ins. Co.*, Del.Supr., 443 A.2d 925, 926 (1982) (citations omitted); *see also Phillips Home Builders*, 700 A.2d at 129.

■ These general principles reflect a policy concern that an insurance contract should be read in accordance with "the reasonable expectations of the insured 'so far as its language will permit.' "[4] Therefore, if the insured's reading is reasonable and in accord with her rational expectations as a consumer, the court will give effect to her expectations if the terms of the contract "are ambiguous or conflicting, or if the policy contains a hidden trap or pitfall, or if the fine print takes away that which has been given by the large print." [5]

With these principles in mind, I turn to a resolution of this motion.

## II.

As a matter of context, it seems to me inarguable that Aceto, like most people, procured health insurance with the rational expectation that it would provide coverage for medical services necessary to sustain her life. Although policyholders recognize that there are coverage limits,[6] it is fair to presume that they generally expect that medical services that are inarguably required to permit the continuation of life itself will be provided unless the policy expressly provides to the contrary.

■ Indeed, DHP acknowledges the seriousness of Aceto's condition and the medical necessity for her to receive a lung transplant. As such, the policy's express exclusion of services that are not medically necessary is not implicated.[7] DHP also concedes that a lung transplant is not "[e]xperimental or [i]nvestigational in nature" and is not within the policy's exclusion for such services.[8]

DHP further admits that a lung transplant fits generally within the policy's following definition of "Covered Services":

Section VII—BENEFITS

On or after the Member's effective date, *a Member is entitled to the services listed in this Section, subject to the Exclusions and Limitations, . . .*

\* \* \*

A. Inpatient Hospital Services

Covered services include:

1. semi-private room, board, and routine nursing service for Medically Necessary care when provided by the Hospital and regularly included in its charges. A private room will be covered if Medically Necessary, or if a semi-private room is not available; and

2. special care units providing an intensive level of care for critically ill patients; and . . .

\* \* \*

D. Specialist Physician and Other Professional Services

*Covered services include:*

1. *inpatient Hospital care,* including daily visits, consultations, critical care, and other medical treatment; and

2. *surgery,* including pre-operative and post-operative care, surgical assistants, co-surgeons, and the administration of anesthesia by a physician; and . . . [9]

As a result, DHP admits that a lung transplant is a covered service unless some other part of the contract limits or excludes it. But DHP contends that the policy's inclusion of the following provision affirmatively covering certain transplant services, implicitly excludes coverage for other transplants:

4. *Hallowell,* 443 A.2d at 927 (*quoting State Farm Mut. Automobile Ins. Co. v. Johnson,* Del.Supr., 320 A.2d 345, 347 (1974)).

5. *Id.*

6. All too well, some might say.

7. Policy § VIII, A.1.

8. *Id.* § VIII, A.2.

9. Policy § VII, A.1.–A.2. & D.1.–D.2 (emphasis added).

Section VII—BENEFITS

\* \* \*

### K. ORGAN TRANSPLANTS

When the recipient is a Member, the Plan will cover Hospital and surgical organ transplant services for the following:

1. kidney transplants;
2. bone marrow transplants; and
3. cornea transplants.[10]

In this regard, DHP asserts that:

The health benefits policy issued by DHP to Aceto is clear and unambiguous. It identifies three transplants that are covered: kidney, bone [marrow], and cornea. Where a policy contains an enumerated list of transplants, there is no need for a specific exclusion excluding coverage for all other transplants. The inclusive list serves as a policy limitation, automatically excluding items not on the list, under the interpretative maxim *inclusio urius est exclusio alterius.* Accordingly, there is no coverage under the DHP policy for lung transplant procedure.[11]

For several reasons, I believe that the venerable interpretative maxim of *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another) cannot sustain DHP's reading of the policy.[12]

As an initial matter, the lung transplant falls squarely within the contract's definition of covered services. For Aceto, a lung transplant is a medically necessary, non-experimental, surgical procedure. Be-

cause the procedure fits so easily within the policy's definition of covered services, an exclusion should not be lightly inferred but must rest on a "limitation" or "exclusion" deriving from a natural and unstrained reading of other language in the policy.[13] This is especially so in this context because an exclusion would defeat a basic expectation of Aceto: that her health insurance would be there when she most needs it—when her very life is on the line.[14]

In arguing for its construction of the policy as excluding lung transplant coverage, DHP hangs far too much weight on the policy's specific coverage of three types of organ transplants. Section VII, the "BENEFITS" section of the policy—that is, an inclusionary section of the policy—is quite careful to expressly exclude or limit coverage of general categories when such an exclusion or limitation is desired. Put another way, the fact that the contract generally defines a specific service as "covered" was not viewed by DHP as sufficient to exclude other similar services. Rather, a member is entitled to a service listed in § VII subject to stated "Exclusions and Limitations." [15]

For example, the policy expressly indicates that "Oral Surgical Services ... are limited to" certain defined procedures.[16] The policy covers certain "Family Planning and Infertility Services" but "[t]reatment of infertility is not covered." [17] The words "is [or are] limited to," "covered only when," and "is [or are] not covered" are used repeatedly throughout § VII.[18]

---

10. Policy § VII, K.

11. DHP Br. at 5.

12. A maxim more commonly applied in the statutory, rather than contractual, interpretative process. *See, e.g., Walt v. State,* Del. Supr., 727 A.2d 836, 840 (1999) (using the doctrine in the statutory context).

13. Policy § VII.

14. *Hallowell,* 443 A.2d at 927.

15. Policy § VII.

16. Policy § VII, F.

17. *Id.* § VII, G.

18. *See, e.g., id.* § VII, F, G, I, J, L, M, N, Q & R. Notably, subsection K of § VII contains the language "will only be covered" not to limit what organ transplants will be covered but to define when the medical expenses of organ *donors* for the listed procedures will be covered by the policy. *Id.* § VII, K.

As a result, it is out of keeping with the general approach of § VII to imply rather than expressly state an exclusion.[19]

The fact that the policy has an extensive "EXCLUSIONS" section also cuts against DHP's construction.[20] That section sets forth *thirty-seven* specific exclusions. These include exclusions from services that would otherwise fall within the definition of covered services in the policy. For example, although surgery is generally a covered service, § VIII excludes "surgery and any related services intended solely to improve appearance, but not to restore bodily function or to correct deformity resulting from disease, trauma, congenital or developmental abnormalities...."[21] The "EXCLUSIONS" do not reference lung transplants.[22]

In view of the policy's general approach to exclusions—which is to state them ex-pressly—DHP's reading strikes me as un-tenable.[23] If the drafter intended the expression of an item as covered to exclude all other related items, why does the policy indicate that policyholders were entitled to covered services "subject to the Exclusions and Limitations?"[24] And if the drafter harbored that intention, she took a very erratic, belts and suspenders approach to implementation.[25]

DHP also contends that a reading of the contract at odds with its own renders § VII, K meaningless and dictates that "there can be no organ transplant procedure not covered under the DHP policy,...."[26] But these arguments are at best overstated. Subsection K of § VII of the policy still has meaning as an "inclusionary" provision if it is not read it as an "exclusionary" one. For example, the policy gives DHP substantial discretion to de-

---

19. *See Fragner v. American Community Mut. Ins. Co.,* 199 Mich.App. 537, 502 N.W.2d 350, 352–53 (1993) (where health insurance policy listed transplants from living donors as covered in inclusionary section of policy and did not expressly exclude coverage for transplants from deceased donors, the insurer's argument that the policy excluded coverage for transplants from deceased donors was "not a fair reading of the entire policy and [was] not in line with Michigan case law, which requires that contractual language be given its ordinary and plain meaning").

 In this regard, a case on which DHP relies, *Wota v. Blue Cross and Blue Shield of Colorado,* 820 P.2d 1137 (Colo.Ct.App.), *aff'd,* 831 P.2d 1307 (Colo.1992) (en banc), does little to support its position. In *Wota,* the health insurance contract's benefits provision stated: "Only the following transplants procedures will be covered. a. Corneal (eye) transplant. b. Kidney (renal) transplant. c. Bone marrow transplant." 831 P.2d at 1309. The court held that the policy excluded coverage for a heart-related transplant. Although the court held that the insurer had a duty to clearly state the limitations of coverage, it held that this duty was satisfied. I find little reason to quibble with the ultimate result in *Wota,* because the use of the words "[o]nly the following transplant procedures will be covered" clearly stated that non-listed transplant procedures were excluded. As to lung transplants, the DHP policy does not contain clear exclusionary language of this nature.

20. Policy § VIII, A.

21. Policy § VIII, A.8; *see also id.* § VIII, A.15 (no coverage for surgery for reverse sterilization); § VIII, A.20 (no surgery to repair myopia, hyperopia, or stigmatic error); § VIII, A.22 (no surgery related to sex changes or modifications).

22. *See Fragner,* 502 N.W.2d at 353 (where policy's "Exclusions" section did not mention transplants, this supported interpretation that they were covered).

23. *Cf. Robb v. Ramey Associates, Inc.,* Del.Super., 14 A.2d 394, 396 (1940) ("Great caution is required in the application of the [*expressio unius*] maxim. It is not a rule of universal application, but is to be applied only as an aid in arriving at intention, and not to defeat the apparent intention.") (citations omitted); *Director, Office of Workers' Compensation Programs v. Bethlehem Mines Corp.,* 669 F.2d 187, 197 (4th Cir.1982) (indicating that the *expressio unius* maxim "is to be applied with great caution" and that some authorities consider it "unreliable").

24. Policy § VII.

25. *Robb,* 14 A.2d at 396 ("The mention of one thing is not held to be exclusive when the context shows a different intention; ...").

26. DHP Br. at 8.

cide that a particular treatment is still experimental. The inclusion of the three items can be read as reflecting DHP's judgment that those three transplants have evolved to the level of effectiveness where that is no longer an issue and to preclude exclusion on that basis. Nor does a reading different from DHP's require it to fund frivolous and unproven transplant procedures. of sundry nature. As to any other transplant procedure proposed for a particular patient, DHP may deny coverage if it, in good faith and in compliance with policy procedures, concludes that the transplant procedure is not medically necessary or is experimental.

 While I recognize that DHP contends that it drafted subsection K of § VII and that it knows that it subjectively intended that subsection to exclude other transplant procedures because of their substantial costs,[27] DHP's subjective intentions cannot control the interpretation of the policy. Rather, the best reading of the contract as written is the controlling factor. And I believe the language of the policy is most easily read as covering Aceto's lung transplant as a medically necessary, non-experimental surgical procedure not excluded by any specific provision of the policy.

At the very most, the policy's affirmative coverage of three specific transplant procedures creates an ambiguity about whether a lung transplant is covered. To the extent that the policy's own terms admit of more than one reasonable reading, the ambiguity must be interpreted against DHP and for Aceto.[28] Because Aceto has advanced a reasonable reading of the contract in accordance with her legitimate expectations, DHP must suffer the costs of its own drafting imprecision. The implicit "exclusion" for which DHP contends is the very sort of "hidden trap or pitfall" that this rule of interpretative construction is designed to protect consumers against.[29]

That is, if the express language of the policy is unclear, there are two reasonable readings, and this case ultimately turns on a battle between the interpretative maxims of *"contra preferentem"* and *"expressio unius est exclusio alterius,"* there is a clear winner. In the context of an insurance contract's construction, *contra preferentem* "is the windshield" and *expressio unius* is the "bug." [30]

Therefore, I conclude that the policy covers the services Aceto needs to obtain a lung transplant. In so concluding, it is appropriate to acknowledge that health insurers like DHP must make difficult, and at times excruciating, decisions about which medical services to cover. It is a regrettable reality that the more extensive the coverage that is provided under a health insurance policy, the higher the cost of that policy and the fewer individuals who can afford to purchase it. The question of how to balance this tension between access and adequacy is an enormous one with which health insurers and our society as a whole grapple.

Nothing in this ruling precludes DHP from amending its policy (through a contractually proper procedure) on a prospective basis to clearly exclude certain transplants. All this ruling says is that it has not done so to date with respect to lung transplants that otherwise fit within the policy's definition of covered services.

### III.

For the foregoing reasons, Aceto's motion for summary judgment is GRANTED

---

**27.** Fatally to DHP on this summary judgment motion, no affidavit or other evidence supports that contention.

**28.** *Hallowell*, 443 A.2d at 926.

**29.** *Hallowell*, 443 A.2d at 928; *Phillips Home Builders,* 700 A.2d at 130 (the insurer has "the opportunity and responsibility to state the terms of its coverage and exclusions in clear and understandable language").

**30.** Mark Knopfler, *The Bug* (Chariscourt Ltd. All Rights Administered by Almo Music Corp. 1991), which is included on the Dire Straits' album *On Every Street.*

and DHP's motion for summary judgment is DENIED. Aceto shall submit a final order, upon approval by DHP as to form, no later than one week from the date of this opinion.