# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| ANDREW MEDAL, as Stakeholders' Representative for the former stakeholders of Due Dilly Trilly, Inc., a Delaware corporation, | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 2023-0984-VLM |
| | ) | |
| v. | ) | |
| | ) | |
| BECKETT COLLECTIBLES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Submitted: May 6, 2024
Decided: August 22, 2024

*Upon Defendant's Motion to Dismiss the Amended Complaint,*
**DENIED.**

Peter B. Ladig, Esquire, BAYARD, P.A., Wilmington, Delaware. *Attorneys for Plaintiff.*

Paul D. Brown, Esquire, CHIPMAN BROWN CICERO & COLE, LLP, Wilmington, Delaware, Aaron Z. Tobin, Esquire, Abigail R. Campbell, Esquire, CONDON TOBIN SLADEK THORNTON NERENBERG PLLC, Dallas, Texas. *Attorneys for Defendant.*

**Medinilla, J.[1]**

---

[1] Sitting as a Vice Chancellor of the Court of Chancery of the State of Delaware by designation of the Chief Justice of the Supreme Court of Delaware under Del. Const. art. IV, § 13(2), pursuant to *In re Designation of Actions Filed Pursuant to 8* Del. C. *§ 111* (Del. Sept. 18, 2023) (ORDER).

# I.    INTRODUCTION

This is an action for breach of contract. Plaintiff Andrew Medal brings this suit in his capacity as the contractually designated representative of the former stakeholders of Due Dilly Trilly, Inc. ("DDT"). DDT's former stakeholders sold DDT to Defendant Beckett Collectibles, LLC through a Stock Purchase Agreement dated August 4, 2022 (the "SPA"). Plaintiff asserts that Defendant breached the SPA by failing to pay post-closing milestone consideration.

Defendant moves to dismiss Plaintiff's Amended Complaint on both procedural and substantive grounds. Procedurally, Defendant raises several issues that stem from Mr. Medal's multiple roles in this dispute. Specifically, in addition to representing DDT's former stakeholders as Plaintiff, Mr. Medal is also a factually significant individual whose termination from Defendant is at the heart of this controversy. Defendant thus argues that (1) Mr. Medal, in his representative capacity as Plaintiff, has no standing to pursue a declaratory judgment; (2) Mr. Medal, in his personal capacity, is a necessary party; (3) the former stakeholders of DDT, who Mr. Medal represents as Plaintiff, are each necessary parties; and (4) Mr. Medal, in his personal capacity, is attempting to "back-door a ruling that his termination was improper," which Defendant says must be resolved by the Texas courts. For the reasons herein, the Court does not agree with any of those contentions.

Defendant also argues that Plaintiff's claims fail on the merits. Specifically, that Counts I and II must be dismissed because they do not affirmatively identify breach of contract as the applicable cause of action. Defendant also offers its own interpretation of the SPA and the relevant facts, which, if accepted, would refute Plaintiff's claims. The Court, however, finds that Plaintiff has pled reasonably conceivable breach-of-contract claims. Accordingly, Defendant's Motion to Dismiss the Amended Complaint is **DENIED**.

## II.    FACTUAL BACKGROUND[2]

### A. The Parties

As discussed more fully below, Plaintiff Andrew Medal is the contractually designated representative of DDT's former stakeholders.[3] He is also the founder of DDT and the former Chief Innovation Officer ("CIO") of Defendant.[4] Unless otherwise indicated, this decision will refer to Mr. Medal in his representative capacity as "Plaintiff" and his personal capacity as "Mr. Medal." Mr. Medal is a resident of Florida.[5]

---

[2] The following facts are derived from the allegations in the Amended Complaint and the documents either incorporated therein or integral thereto. *See* D.I. No. 8 (hereinafter, "Am. Compl."). The Court accepts these allegations as true solely for purposes of this motion.
[3] Am. Compl. ¶ 7.
[4] *Id.* ¶¶ 7, 14.
[5] *Id.* ¶ 13.

Defendant Beckett Collectibles, LLC is a North Carolina limited liability company headquartered in Texas.[6]

## B. The SPA

Defendant specializes in pricing collectibles, such as trading cards and sports memorabilia.[7] DDT "provided digital market place intelligence for the collectible industry."[8] In December 2021, Defendant proposed a transaction between DDT and Defendant.[9] After negotiations, the parties executed the SPA on August 4, 2022, through which Defendant bought all the shares of DDT.[10] The SPA called for Closing Consideration of $6 million, Installment Consideration of approximately $3.4 million, and contingent Milestone Payments of up to $5,625,000.[11] Only the Milestone Payments are at issue in this litigation.

SPA Section 2.05 governs the Milestone Payments. Exhibit A to the SPA (the "Milestone Exhibit") describes eight Milestones, each of which were worth a different amount, for a total of $5,625,000.[12] Each Milestone Payment would be "earned upon the successful achievement (to the reasonable satisfaction of

---

[6] *Id.*
[7] *Id.* ¶ 9.
[8] *Id.* ¶ 8.
[9] *Id.* ¶ 12.
[10] *Id.* ¶¶ 1, 8, 13; *see also* Def.'s Mot., Ex. A (hereinafter, "SPA").
[11] Am. Compl. ¶ 13.
[12] SPA, Ex. A (hereinafter, "Milestone Exhibit").

3

[Defendant]) of the applicable Milestone."[13] Plaintiff had 22.5 months after closing to achieve these Milestones.[14]

The Milestone Exhibit describes the applicable acceptance procedure for Milestone deliverables.[15] First, Plaintiff would submit the relevant deliverable to Defendant for approval.[16] Defendant then had a fifteen-day "Evaluation Period" to either accept or reject the deliverable.[17] A deliverable would be deemed accepted in two circumstances: "(a) if [Defendant] provides written notice of acceptance within the Evaluation Period, or (b) if [Defendant] does not provide written notice of Rejection within the Evaluation period."[18] Defendant could reject a deliverable "by notifying [Plaintiff] in writing. Such notice of Rejection shall include a written explanation with details for the basis of such Rejection and what portion of the Deliverable failed to meet the Acceptance Criteria."[19]

Additionally, and central to this litigation, SPA Section 2.05(b) provides:

> If, during the Milestone Period, (i) Andrew Medal's employment is terminated by [Defendant] or any of its Affiliates without Cause (as defined in the Medal Employment Agreement), (ii) Andrew Medal resigns from his employment with [Defendant] or any of its Affiliates with Good Reason (as defined in the Medal Employment Agreement), or (iii) [Defendant] determines not to continue pursuing the development of the intellectual property and technology contemplated

---

[13] SPA § 2.05(a).
[14] *Id.*
[15] Milestone Exhibit § 1(A).
[16] *Id.*
[17] *Id.*
[18] *Id.* § 1(C).
[19] *Id.* § 1(D).

4

by the Milestones (provided that, if [Defendant] notifies [Plaintiff] of such a determination at any time during the Milestone Period, [Plaintiff] agrees to work in good faith with [Defendant] to agree to amendments and/or adjustments to the Milestones in order to address [Defendant]'s concerns and avoid triggering this clause (iii), and each Stakeholder authorizes [Plaintiff] to consent to any such amendments and/or adjustments on such Stakeholder's behalf), [Defendant] shall pay to Stakeholders the full amount of any unpaid Milestone Payments in accordance with Section 2.05(d).

SPA Section 2.05(c), in contrast, provides:

If, during the Milestone Period, (i) Andrew Medal's employment is terminated by [Defendant] or any of its Affiliates for Cause (as defined in the Medal Employment Agreement) or (ii) Andrew Medal resigns from his employment with [Defendant] or any of its Affiliates without Good Reason (as defined in the Medal Employment Agreement), any Milestone Payments that have not been earned prior to the date of such termination or resignation shall automatically be forfeited (for the avoidance of doubt, any Milestone Payments that have been earned prior to the date of such termination or resignation shall remain payable in accordance with this Section 2.05).

Regarding remittance of the Milestone Payments, SPA Section 2.05(d) provides:

Any Milestone Payment that is earned shall be paid by [Defendant] to the Stakeholders, within 30 calendar days of the date such Milestone is earned (the "Milestone Payment Date"), pro rata based on their respective Pro Rata Shares as set forth next to each Stakeholder's name in the Closing Stakeholder Certificate, by wire transfer of immediately available funds to the Stakeholders to their respective accounts as set forth on the Closing Stakeholder Certificate.

And with respect to disputes, SPA Section 2.05(f) provides:

If [Plaintiff] and [Defendant] disagree on whether a Milestone has been achieved, [Plaintiff] and [Defendant] shall cooperate in good faith for a period of 30 days to attempt to resolve such disagreement. If after such

5

period the matter remains unresolved, either [Plaintiff] or [Defendant] may bring an action pursuant to Section 12.10.

SPA Section 12.10(a) provides in relevant part that the SPA "shall be governed by and construed in accordance with the internal laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule." And the relevant portion of SPA Section 12.10(b) provides:

> ANY LEGAL SUIT, ACTION OR PROCEEDING ARISING OUT OF OR BASED UPON THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY MAY BE INSTITUTED IN THE FEDERAL COURTS OF THE UNITED STATES OF AMERICA OR THE COURTS OF THE STATE OF DELAWARE IN EACH CASE LOCATED IN THE CITY OF WILMINGTON, AND EACH PARTY HERETO IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF SUCH COURTS IN ANY SUCH SUIT, ACTION OR PROCEEDING.

Finally, Article X of the SPA grants broad powers to Mr. Medal as the "Stakeholders' Representative." In that regard, SPA Section 10.01 states:

> Stakeholders hereby appoint Andrew Medal as Stakeholders' Representative to act as the agent of Stakeholders for the purpose of this Agreement and the transactions contemplated hereunder and to take any and all actions and make any and all decisions required or permitted to be taken or made by the Securityholders' Representative under this Agreement and the Ancillary Documents, including the exercise of the right to (i) give and receive notices and communications, (ii) agree to, negotiate, enter into settlements and compromises of and comply with court orders with respect to disputes, (iii) agree to, negotiate, enter into and provide amendments and supplements to and waivers and (iv) take all actions necessary or appropriate in the good faith judgment of the Securityholders' Representative for the accomplishment of the foregoing.

SPA Section 10.02 adds:

> Each Stakeholder agrees that Stakeholders' Representative shall have the power and authority to take all actions and make all decisions on behalf of, and to bind, all Stakeholders, and that [Defendant] shall have the right to rely on such authority of, and any communications given, actions taken and decisions made by, Stakeholders' Representative with respect to this Agreement and the transactions contemplated hereunder. Each Stakeholder acknowledges and agrees that such Stakeholder shall be bound by the actions and decisions of Stakeholders' Representative, and that such Stakeholder shall have no claims against [Defendant] with respect to any actions taken or decisions made by [Defendant] in reliance on such actions and decisions of Stakeholders' Representative. Any references to "Stakeholders" under this Agreement shall be deemed to include Stakeholders' Representative, as appropriate given the context.

## C. The Employment Agreement

In connection with the SPA, Mr. Medal signed an employment agreement with Defendant (the "Employment Agreement").[20]  The SPA expressly listed the "Medal Employment Agreement" as an "Ancillary Document," and the SPA's closing was conditioned on Mr. Medal delivering the executed Employment Agreement to Defendant.[21]  The Employment Agreement called for Mr. Medal to serve as Defendant's CIO for two years.[22]

---

[20]  Am. Compl. ¶ 14; *see also* Def.'s Mot., Ex. B (hereinafter, "Empl. Agmt.")
[21]  SPA §§ 1, 8.01(f).
[22]  Am. Compl. ¶ 14.

The Employment Agreement is relevant to this dispute primarily because it provides the applicable definition of a termination for "Cause."[23] As relevant here, the definition of "Cause" includes:

> (iii) any conduct by or at the direction of [Mr. Medal] constituting a breach of [Mr. Medal]'s duty of loyalty or other fiduciary duty owing to [Defendant] or any of its subsidiaries or affiliates . . . ; (iv) any willful and continued failure by [Mr. Medal] to perform [Mr. Medal]'s material, ordinary and customary duties as an employee of [Defendant] hereunder or any lawful directive of the Board, a material breach by [Mr. Medal] of any provision of this Agreement or an intentional and material violation by [Mr. Medal] of any of [Defendant]'s written employment policies, in each such case, which has continued for more than thirty days following written notice of such non-performance from [Defendant] and an opportunity to cure such purported non-performance during such 30-day notice period[.][24]

Also of note, the Employment Agreement provides that it "shall be governed by the internal law of the State of Texas, without regard to conflict of law principles that would result in the application of any law other than the law of the State of Texas."[25] Moreover, the Employment Agreement states: "all Actions arising out of or based upon this Agreement or the subject matter hereof shall be brought and maintained exclusively in the State of Texas or any federal court located in the State of Texas[.]"[26]

---

[23] SPA § 2.05(b).
[24] Empl. Agmt. § 5(d).
[25] *Id.* § 19.
[26] *Id.*

8

## D. Relevant Post-Closing Developments

Plaintiff believes that three different circumstances each entitle DDT's former stakeholders to additional Milestone Payments under SPA § 2.05.

At the outset, Plaintiff contends that "[o]n several occasions," Plaintiff submitted deliverables to Defendant that were each rejected.[27]  And that those rejections were not accompanied by written explanations as required by Milestone Exhibit Section 1(D).[28]  Thus, according to Plaintiff, the nonconforming rejection notices are without effect, so the purportedly rejected deliverable should be "deemed accepted" pursuant to Milestone Exhibit Section 1(C).[29]

Separately, Defendant terminated Mr. Medal on August 15, 2023.[30]  Plaintiff alleges that Defendant had not provided notice of any material nonperformance or other deficiency, so the termination cannot be considered for Cause.[31]  Plaintiff maintains that even after Mr. Medal's counsel pressed Defendant for an explanation, Defendant never offered a viable Cause for termination.[32]  Because Plaintiff asserts that Defendant terminated Mr. Medal without Cause, Plaintiff claims "the full

---

[27]  Am. Compl. ¶ 23.
[28]  *Id.*
[29]  *Id.* ¶ 45.
[30]  *Id.* ¶ 24.
[31]  *Id.*
[32]  *Id.* ¶¶ 24–27.

amount of any unpaid Milestone Payments" came due under SPA Section 2.05(b)(i).[33]

Last, between the filing of Plaintiff's initial Complaint and the at-issue Amended Complaint, Plaintiff alleges that Defendant terminated eight "key" DDT employees.[34] Defendant purportedly told the terminated employees that Defendant was "going in another direction."[35] According to Plaintiff, these terminations mean Defendant ceased pursuit of the Milestones, which—like Mr. Medal's alleged termination without Cause—triggers the accelerated payment of all unpaid Milestone Payments pursuant to SPA Section 2.05(b)(iii).[36]

## III. PROCEDURAL HISTORY

Plaintiff commenced this action with the initial Complaint on September 28, 2023.[37] Defendant moved to dismiss the Complaint,[38] so Plaintiff filed an Amended and Supplemental Complaint on December 20, 2023.[39] Defendant moved to dismiss the Amended Complaint on January 22, 2024.[40] Plaintiff opposed that motion on

---

[33] *Id.* ¶¶ 31–34.
[34] *Id.* ¶ 29.
[35] *Id.*
[36] *Id.*
[37] D.I. No. 1.
[38] D.I. No. 7.
[39] Am. Compl.
[40] Def.'s Mot.

April 8, 2024.[41] Defendant replied on April 23, 2024.[42] The Court heard oral argument on May 6, 2024.[43]

## IV. STANDARD OF REVIEW[44]

### A. Rule 12(b)(1)

Motions under Court of Chancery Rule 12(b)(1) contest this Court's subject matter jurisdiction and are "in essence a question of the power of a court to hear and decide the case before it."[45] The plaintiff bears the burden of establishing the Court's subject matter jurisdiction.[46] "In resolving a motion to dismiss under Court of Chancery Rule 12(b)(1) for lack of subject matter jurisdiction, the court must take all well-pleaded allegations in the complaint as true and make reasonable inferences in the non-movant's favor."[47]

### B. Rule 12(b)(7)

"This Court may dismiss a claim under Rule 12(b)(7) for failure to join a necessary and indispensable party in accordance with Rule 19."[48] There are two

---

[41] D.I. No. 14 (hereinafter, "Pl.'s Opp'n").

[42] D.I. No. 18 (hereinafter, "Def.'s Reply").

[43] D.I. No. 25.

[44] The Court applies the Court of Chancery Rules in effect at the time this action was filed. *See Bricklayers Pension Fund of W. Pa. v. Brinkley*, 2024 WL 3384823, at *12 n.143 (Del. Ch. July 12, 2024) (citations omitted).

[45] *Advent Int'l Corp. v. Servicios Funrarios GG S.A. de C.V.*, 2024 WL 3580934, at *4 (Del. Ch. June 7, 2024) (quoting *Abbot v. Vavala*, 2022 WL 453609, at *5 (Del. Ch. Feb. 15, 2022)).

[46] *Id.* (quoting *Ropp v. King*, 2007 WL 2198771, at *2 (Del. Ch. July 25, 2007)).

[47] *Id.* (citing *de Adler v. Upper N.Y. Inv. Co.*, 2013 WL 5874645, at *7 (Del. Ch. Oct. 31, 2013)).

[48] *Sorenson Impact Found. v. Cont'l Stock Transfer & Tr. Co.*, 2022 WL 17039158, at *1 (Del. Ch. Nov. 17, 2022) (citing Ct. Ch. R. 12(b)(7)).

components to this inquiry.[49]  First, "the Court determines whether an absent party is necessary."[50]  If so, the absent, necessary party "should be joined if feasible."[51] "When an absent party is necessary but joinder is not feasible, the Court weighs the four factors of [Rule] 19(b) to determine that party's indispensability."[52]

## C. Rule 12(b)(6)

Under the well-establish standard of review applicable to a motion to dismiss pursuant to Court of Chancery Rule 12(b)(6):

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[53]

"A trial court is not, however, required to accept as true conclusory allegations without specific supporting factual allegations."[54]

---

[49] *Id.*

[50] *Id.* (citing *NuVasive, Inc. v. Lanx, Inc.*, 2012 WL 2866004, at *1 (Del. Ch. July 11, 2012)).

[51] *Id.* (citing *NuVasive*, 2012 WL 2866004, at *2).

[52] *Id.*  The four factors are: "(1) to what extent a judgment might be prejudicial to the absent person or the parties; (2) the extent to which provisions in the judgment can lessen or avoid prejudice; (3) whether the person's absence will render the judgment inadequate; and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder."  *Id.* at *2 (citing Ct. Ch. R. 19(b)).

[53] *Ramco Asset Mgmt., LLC v. USA Rare Earth, LLC*, 2024 WL 1716399, at *4 (Del. Ch. Apr. 22, 2024) (quoting *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[54] *Id.* (quoting *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006)).

## V. DISCUSSION

### A. The "Stakeholders' Representative" Can Represent DDT's Former Stakeholders in this Litigation.

First, Defendant raises several procedural issues regarding Plaintiff's ability to represent DDT's former stakeholders, as well as Plaintiff's ability to pursue this action without Mr. Medal first litigating a Texas-based action in his personal capacity. The Court will address each of Defendant's arguments in turn.

### 1. The Court has Jurisdiction to Issue a Declaratory Judgment.

Count III of the Amended Complaint requests, in part, "a declaration that any milestone submissions rejected without written reasons are deemed accepted."[55] Delaware courts are empowered by 10 *Del. C.* § 6501 to issue declaratory judgments.[56] "There are four prerequisites for declaratory judgment jurisdiction."[57]

They are: (1) "a controversy involving the rights or other legal relations of the party seeking declaratory relief"; (2) "a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim"; (3) "the controversy must be between parties whose interests are real and adverse"; and (4) "the issue involved in the controversy must be ripe for judicial determination."[58]

---

[55] Am. Compl. ¶ 46.
[56] *See* 10 *Del. C.* § 6501.
[57] *Goldenberg v. Immunomedics, Inc.*, 2021 WL 1529806, at *19 (Del. Ch. Apr. 19, 2021) (citing *Monsanto Co. v. Aetna Cas. & Sur. Co.*, 565 A.2d 268, 274 (Del. Super. 1989)).
[58] *Id.* (citations omitted).

Defendant argues that the first prerequisite is lacking because the right to Milestone Payments belongs to DDT's former stakeholders, not their designated representative.[59] That is despite SPA Section 2.05(f)'s language that expressly gives "the Stakeholders' Representative" authority to bring actions with respect to Milestone Payment disputes.[60] Regardless, Defendant posits that representative parties are incapable of pursuing declaratory relief on behalf of those who they represent.[61] That proposition runs counter to existing precedent.

Simply put, "[t]he contractual appointment of a shareholder representative to bring certain actions *makes that representative the real party in interest in those actions*."[62] "This structure is helpful to both buyers and sellers, as it 'enables each side to resolve post-closing disputes efficiently.'"[63] That eye toward efficiency aligns with the purpose of the Declaratory Judgment Act, which was "born out of practical concerns, providing efficient relief where a traditional remedy is otherwise unavailable."[64]

---

[59] Def.'s Mot. at 27–28.

[60] SPA § 2.05(f) ("If after [thirty days of disagreement about whether a Milestone has been achieved] the matter remains unresolved, either *the Stakeholders' Representative* or Buyer may bring an action pursuant to Section 12.10." (emphasis added)).

[61] Def.'s Mot. at 27–28.

[62] *Fortis Advisors LLC v. Allergan W.C. Hldg. Inc.*, 2020 WL 2498068, at *3 (Del. Ch. May 14, 2020) (emphasis added) (citing *Coughlan v. NXP B.V.*, 2010 WL 1531596, at *2–3 (Del. Ch. Apr. 15, 2010)).

[63] *Id.* (citing *Ballenger v. Applied Dig. Sols., Inc.*, 2002 WL 749162, at *10 (Del. Ch. Apr. 24, 2002)).

[64] *Intermec IP Corp. v. TransCore, LP*, 2021 WL 3620435, at *24 (Del. Super. Aug. 16, 2021) (cleaned up) (citing *Schick Inc. v. Amalgamated Clothing & Textile Workers Union*, 533 A.2d 1235, 1238 (Del. Ch. 1987)).

Moreover, "[t]his Court has been 'reluctant to disregard the clear contractual authority of the Stockholders' Representative at the behest of a party, [Defendant], whose aims are clearly adverse to those of the former [Stockholders].'"[65]  And this Court routinely entertains declaratory judgment actions brought by parties in a representative capacity.[66]  Defendant's brief acknowledges as much in its recitation of the four prerequisites to a declaratory judgment.[67]  Defendant has provided no substantive reason to break from that precedent and the Court declines to do so here.

### 2. The Represented Former Stakeholders are Not Necessary Parties.

Defendant makes a similar argument pursuant to Rule 19.  That is, Defendant says DDT's former stakeholders are each necessary parties and, therefore, should be joined pursuant to Rule 19(a).[68]  Similarly to the preceding analysis, the Court will not deprive DDT's former stakeholders of their chosen representative in the guise of protecting their interests.

Under Rule 19(a), party is necessary and must be joined if feasible when:

---

[65] *Allergan W.C.*, 2020 WL 2498068, at *3 (second and third alterations in original) (quoting *Ballenger*, 2002 WL 749162, at *11).

[66] *See, e.g.*, *Fortis Advisors LLC v. Medtronic Minimed, Inc.*, 2024 WL 3580827, at *5 (Del. Ch. July 29, 2024); *VT S'holder Representative, LLC v. Edwards Lifesciences Corp.*, 2023 WL 8597956, at *1 (Del. Ch. Dec. 12, 2023); *S'holder Representative Servs. LLC v. HPI Hldgs., LLC*, 2023 WL 3092895, at *3 (Del. Ch. Apr. 26, 2023); *S'holder Representative Servs. LLC v. Alexion Pharms., Inc.*, 2021 WL 3925937, at *3 (Del. Ch. Sept. 1, 2021).

[67] Def.'s Mot. at 22, 27 (quoting *Mehiel v. Solo Cup Co.*, 2005 WL 1252348, at *4 (Del. Ch. May 13, 2005)); *Mehiel*, 2005 WL 1252348, at *1 ("Plaintiff, Dennis Mehiel, is the designated stockholder representative of [non-party] SFH[.]").

[68] *See* Def.'s Mot. at 21–23.  Defendant did not argue that DDT's former stakeholders are indispensable parties, so this analysis only pertains to whether the former stakeholders must be joined if feasible.

15

> the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.[69]

At its core, Rule 19(a) requires joinder when a party's absence risks prejudice to either the absent party or one of the active litigants. No such risk is present here.

The Court is guided by the analysis in *Ballenger*.[70] There, three contractually designated stockholders' representatives filed suit to obtain unpaid earnout payments that, like here, the represented former stockholders would "share on a *pro rata* basis."[71] The defendant "contend[ed] that th[e] case must be dismissed because the plaintiffs [did] not join[] all the previous stockholders . . . who sold their shares in the merger."[72] That contention was rejected in *Ballenger*.

That court first emphasized that stockholders' representatives serve a mutually beneficial purpose in simplifying post-closing litigation.[73] The court also explained the incongruity of allowing a buyer to frustrate a sellers' case by claiming that the sellers' litigation strategy would prejudice the sellers.[74] And, as here, there was no risk of prejudice to the defendant because the relevant contract bound the former

---

[69] *NuVasive*, 2012 WL 2866004, at *1 (quoting Ct. Ch. R. 19(a)).
[70] *See Ballenger*, 2002 WL 749162, at *10–11.
[71] *Id.*
[72] *Id.* at *9.
[73] *Id.* at *10.
[74] *Id.* at *11.

16

stockholders to the actions taken by their representatives.[75]  Accordingly, the

*Ballenger* court found the represented former stockholders were not necessary

parties under Rule 19.

Defendant asks this Court to distinguish these facts from *Ballenger* since

DDT's former stakeholders were each signatories to the SPA.[76]  It appears that in

*Ballenger*, the stockholders signed a separate "Stockholder Authorization Form" but

not the at-issue merger agreement.[77]  Defendant argues the distinction is controlling

because "'[u]nless it is obvious that one not joined has no interest whatever in the

subject matter of the suit,' all parties to a contract under dispute are necessary."[78]

The Court, however, views that argument as a misapplication of a general rule, and

is instead guided by *Ballenger* in this closely analogous circumstance.

DDT's former stakeholders might have an interest in the subject matter of this

suit, but they have no interest in individually pursuing relief.  Rather, in the very

document that Defendant argues forces DDT's former stakeholders into this action,

the former stakeholders expressly gave Plaintiff authority to bring this suit on their

behalf.[79]  Defendant offers no reason for why this Court would blindly adhere to a

broadly stated rule that runs counter to the former stakeholders' contractually

---

[75]  *Id.*; SPA § 10.02.
[76]  Def.'s Reply at 6.
[77]  *Ballenger*, 2002 WL 749162, at *10 n.27.
[78]  *Germaninvestments AG v. Allomet Corp.*, 2020 WL 6870459, at *8 (Del. Ch. Nov. 20, 2020) (quoting *Elster v. Am. Airlines*, 106 A.2d 202, 204 (Del. Ch. 1954)).
[79]  SPA §§ 2.05(f), 10.02.

enshrined decision to do otherwise. The courts of this State endeavor to give effect to contractual arrangements in all but the rarest of circumstances.[80] Through the SPA, DDT's former stakeholders unambiguously designated Plaintiff to represent them in post-closing Milestone disputes; the Court will not invalidate that choice at Defendant's urging.

### 3. Mr. Medal, in his Personal Capacity, is Not a Necessary Party, and Mr. Medal Need Not Bring a Preliminary Litigation in Texas.

Defendant also contends that Mr. Medal, in his personal capacity, is an indispensable party under Rule 19. Here, the argument is that because the basis for Mr. Medal's termination is at issue, he must litigate that issue in his personal capacity.[81] The Court is not persuaded that Mr. Medal is necessary here.

First, with respect to any potential prejudice to Mr. Medal, the Court sees none. Although this Court keeps distinct legal entities analytically separate,[82] the Court will not disregard reality to reach an absurd result. Here, although Mr. Medal presents to the Court in two capacities, he remains one person. And critically, Mr. Medal faces no internal conflict because—in both of his roles—his interest is in

---

[80] *See Cantor Fitzgerald, L.P. v. Ainslie*, 312 A.3d 674, 676–77 (Del. 2024) ("The courts of this State hold freedom of contract in high—some might say, reverential—regard. Only 'a strong showing that dishonoring [a] contract is required to vindicate a public policy interest even stronger than freedom of contract' will induce our courts to ignore unambiguous contractual undertakings." (alteration in original) (quoting *ev3, Inc. v. Lesh*, 103 A.3d 179, 181 n.3 (Del. 2014))).

[81] Def.'s Mot. at 24–26.

[82] *See Feely v. NHAOCG, LLC*, 62 A.3d 649, 667 (Del. Ch. 2012) ("[T]he separate legal existence of juridical entities is fundamental to Delaware law.").

denying that he gave Defendant Cause to terminate him. It would be nonsensical to hold—at his adversary's request—that Mr. Medal risks prejudicing himself by pursuing this action in his own absence.

The prejudice to Defendant is facially more plausible but, ultimately, no more availing. Defendant complains that a ruling on whether Mr. Medal's termination was supported by Cause will bear directly on issues related Mr. Medal's Employment Agreement. It further argues that such a ruling would place it at risk of inconsistent obligations and deprive Defendant of the benefit of the Employment Agreement's exclusive forum selection clause, which designates Texas.

The problem with Defendant's argument is that it presupposes that SPA Section 2.05(b)(i) can only be vindicated through piecemeal, bi-jurisdictional litigation. In other words, Defendant's theory assumes Mr. Medal must bring an employment action in Texas and, once that is resolved, then bring an action on behalf of DDT's former stakeholders in Delaware. The Court rejects this reasoning.

Delaware has a "clear policy against piecemeal litigation."[83] Accordingly, absent plain language to the contrary, the Court will not interpret SPA Section 2.05(b)(i) to not only risk piecemeal litigation but to actually require it. The SPA does not contain any explicit language to that effect. Defendant simply reads that

---

[83] *REJV5 AWH Orlando, LLC v. AWH Orlando Member, LLC*, 2018 WL 1109650, at *5 (Del. Ch. Feb. 28, 2018).

19

requirement into Section 2.05(b) under the assumption that Mr. Medal will eventually bring employment-related claims.

Importantly, to the Court's knowledge, litigation regarding Mr. Medal's personal rights under the Employment Agreement remains purely hypothetical. The Court cannot require Mr. Medal to bring an employment claim in Texas in his personal capacity, and the Court will not place the parties in "litigation limbo" to await a claim Mr. Medal may never assert.[84] Instead, SPA Section 2.05(b)(i)—which inures to the benefit of all of DDT's former stakeholders, not just Mr. Medal—is enforceable separately from any claims Mr. Medal may or may not have under his Employment Agreement. The Court offers no opinion on what effect this litigation might have on any future attempt by Mr. Medal to pursue rights under his Employment Agreement.

Finally, the Court briefly addresses the venue issue underlying much of Defendant's reasoning.[85] As quoted above, the SPA selects Delaware as the exclusive forum for disputes,[86] but the Employment Agreement selects Texas.[87] The

---

[84] *See Lima USA, Inc. v. Mahfouz*, 2021 WL 5774394, at *13–14 (Del. Super. Aug. 31, 2021) (declining to grant a stay until the resolution of a threatened, but not yet pending, action).

[85] Defendant did not move under Rule 12(b)(3). Nevertheless, a preference for Texas as the proper venue for this dispute informs Defendant's analysis. *See, e.g.*, Def.'s Reply at 3 ("[A] ruling on Medal's employment issue . . . is required before any claims regarding rights or obligations to pay Milestone Payments under the SPA are ripe. Importantly though, only Texas courts have jurisdiction to rule on Medal's employment issues.")

[86] SPA § 12.10(b).

[87] Empl. Agmt. § 19.

20

SPA's integration clause, however, reflects that the SPA "and the Ancillary Documents"—which includes the Employment Agreement[88]—constitute the parties' full agreement.[89] Accordingly, the SPA and the Employment Agreement are part of a "unitary contractual scheme" and the Court must read them "harmoniously."[90] If any terms in the SPA and Employment Agreement are inconsistent, "the statements in the body of [the SPA] will control."[91]

This Court finds that the forum selection clauses in the SPA and Employment Agreement can be harmonized if the SPA's forum clause covers disputes that relate to both the SPA and the Employment Agreement, while the Employment Agreement's forum clause only applies to disputes regarding the Employment Agreement but not the SPA. This is so because the SPA's clause applies to actions based upon the SPA "or the transactions contemplated hereby,"[92] whereas the Employment Agreement's clause applies only to actions based upon "this Agreement or the subject matter hereof."[93] Thus, only the SPA's broader clause can apply to disputes touching upon both contracts. And even if the Court found these clauses to be in conflict with respect to actions that implicate both the SPA and Employment

---

[88] SPA § 1.
[89] *Id.* § 12.06.
[90] *See Medtronic*, 2024 WL 3580827, at *9 (citations omitted).
[91] SPA § 12.06.
[92] *Id.* § 12.10(b) (all capitals omitted).
[93] Empl. Agmt. § 19.

Agreement, the SPA plainly states that its terms "will control" in that circumstance.[94]

Therefore, disputes as to SPA Section 2.05(b)(i) must be litigated in Delaware, not Texas.

For those reasons, the Court rejects the argument that Mr. Medal must litigate an employment action in his personal capacity before he can assert claims on behalf of DDT's former stakeholders in Delaware.

## B. Plaintiff's Claims to Relief are Viable.

Having decided that Plaintiff can represent DDT's former stakeholders in this action and need not first pursue an individual employment action in Texas, the Court next addresses Defendant's two primary substantive challenges as to Counts I and II of the Amended Complaint. First, Defendant says Counts I and II seek specific performance with no underlying cause of action to support that request.[95] Second, Defendant argues that Plaintiff is not entitled to relief under the terms of the SPA.[96] The Court discusses each argument in turn.[97]

---

[94] SPA § 12.06.

[95] Def.'s Mot. at 13–14.

[96] *Id.* at 14–20.

[97] Defendant also briefly argues that it properly terminated Mr. Medal for Cause because Mr. Medal breached his fiduciary duties to Defendant. *Id.* at 17. That argument relies upon quintessential issues of facts that cannot be resolved in Defendant's favor at this stage. *See Ramco Asset Mgmt.*, 2024 WL 1716399, at *4.

## 1. Counts I & II State Cognizable Breach of Contract Claims.

Defendant's argument that Counts I and II fail to plead an underlying cause of action does not warrant dismissal of either Count. Defendant is correct that "specific performance is a form of equitable relief dependent upon an underlying cause of action."[98] Defendant is incorrect, however, that Plaintiff's omission of the word "breach" in the relevant portion of the Amended Complaint mandates dismissal. At the pleading stage, this Court is concerned with the factual sufficiency of the complaint, not whether the claimant used certain and precise language to phrase its legal claims.[99]

Counts I and II both contain "a short, plain statement of facts sufficient to support" a breach-of-contract claim.[100] A breach-of-contract claim requires the plaintiff to prove: "(1) the existence of a contractual obligation, (2) a breach of that obligation, and (3) damages as a result."[101]

Counts I and II identify the existence of Defendant's alleged payment obligations under SPA Section 2.05(b).[102] Each Count also identifies the circumstances that allegedly triggered Defendant's payment obligations

---

[98] *See Boulden v. Albiorix, Inc.*, 2013 WL 396254, at *12 (Del. Ch. Jan. 31, 2013).
[99] *See In re McDonald's Corp. S'holder Deriv. Litig.*, 289 A.3d 343, 375–76 (Del. Ch. 2023) (explaining Delaware's rejection of the "theory of the pleadings" doctrine and adoption of a permissive "notice pleading" standard).
[100] *See id.* at 376.
[101] *Levy Fam. Invs., LLC v. Oars + Alps LLC*, 2022 WL 245543, at *8 (Del. Ch. Jan. 27, 2022) (quoting *Deluxe Ent. Servs. v. DLX Acq. Corp.*, 2021 WL 1169905, at *3 (Del. Ch. Mar. 29, 2021)).
[102] Am. Compl. ¶¶ 31, 36.

thereunder.[103]  And Counts I and II both allege that Defendant has refused to fulfill its contractual obligation.[104]  Whether specific performance is the proper remedy for that alleged breach is a question for another day and certainly not grounds for dismissal today.[105]  Counts I and II both adequately plead breach of contract.

## 2. Defendant's Interpretation of SPA Section 2.05 is Not the Only Reasonable One.

The final issue is whether Plaintiff's interpretation of the SPA could conceivably support Plaintiff's claims.  The Court may address "the proper interpretation of language in a contract" at the pleading stage if "the language of [the] contract is plain and unambiguous."[106]  "Contract language is ambiguous 'only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings.'"[107]  "Dismissal is appropriate when the defendant's interpretation is the only reasonable construction as a matter of law and that construction reveals that the plaintiff cannot sustain an actionable claim."[108]

---

[103]  *Id.* ¶¶ 32–33, 37–38.

[104]  *Id.* ¶¶ 2, 30, 35.

[105]  *Palkon v. Maffei*, 311 A.3d 255, 285 (Del. Ch. 2024) ("A court determines remedies after trial, so a pleading-stage assessment is usually premature." (collecting authority)).

[106]  *CHS/ Cmty. Health Sys., Inc. v. Steward Health Care Sys. LLC*, 2020 WL 4917597, at *3 (Del. Ch. Aug. 21, 2020) (alteration in original) (quoting *Allied Cap. Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006)).

[107]  *Id.* (quoting *AT&T Corp. v. Lillis*, 953 A.2d 241, 252 (Del. 2008)).

[108]  *Id.* (citations omitted).

Here, the parties' primary interpretive dispute is whether the final sentence of SPA Section 2.05(b) provides for the acceleration of all unpaid Milestone Payments, or whether it only clarifies that Milestones could continue to be earned after one of the three enumerated circumstances. The relevant language is "[Defendant] shall pay to Stakeholders the full amount of any unpaid Milestone Payments in accordance with Section 2.05(d)."[109]

Plaintiff focuses on the language "the full amount of any unpaid Milestone Payments," while Defendant focuses on the language "in accordance with Section 2.05(d)." Defendant relies heavily on Section 2.05(d) because it provides, in part, "[a]ny Milestone Payment *that is earned* shall be paid by [Defendant] to the Stakeholders."[110] Accordingly, Defendant posits that even if Section 2.05(b) was triggered, it would not require payment of unearned Milestone Payments.

The Court need not reach the reasonableness of Defendant's interpretation at this stage because the Court finds Plaintiff's interpretation is reasonable.[111] Simply put, it is reasonable to read the phrase "the full amount of any unpaid Milestone Payments" to refer to any Milestone Payment that has not been paid. The Court recognizes that "in accordance with Section 2.05(d)" modifies that language, but the bulk of Section 2.05(d) explains the mechanics of how Defendant was obligated to

---

[109] SPA § 2.05(b).
[110] *Id.* § 2.05(d) (emphasis added).
[111] *See Medtronic*, 2024 WL 3580827, at *10.

25

remit the Milestone Payments. Thus, the Court considers it reasonable that the parties intended Section 2.05(b) to reference Section 2.05(d)'s payment mechanics without embracing a requirement that the Milestone Payments be "earned" by achieving said Milestones.

The Court is guided by the fact that SPA Section 2.05(b) would have virtually no meaning unless it included unachieved Milestones.[112] In Defendant's view, SPA Section 2.05(b) only operates to maintain the status quo in the event that Defendant terminates Mr. Medal without Cause or ceases pursuit of the Milestone projects.[113] Defendant contrasts Section 2.05(b) with Section 2.05(c), which states that any unearned Milestones Payments would be forfeited if Mr. Medal is terminated for Cause or resigns without Good Reason.[114] But Defendant does not articulate why forfeiture would apply in the circumstances listed in Section 2.05(b) in the absence of an explicit clarification. To the contrary, it seems that even if Section 2.05(b) were omitted, forfeiture would only apply in the two circumstances enumerated in Section 2.05(c).[115] In sum, the Court finds Plaintiff's interpretation of SPA Section 2.05(b) to be a reasonable one.

---

[112] *See Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010).
[113] Def.'s Mot. at 15–16.
[114] *Id.* at 16.
[115] *See Crispo v. Musk*, 2022 WL 6693660, at *5 n.36 (Del. Ch. Oct. 11, 2022) (noting "the *expressio unius est exclusio alterius* maxim applies in the contractual interpretation context" (citing *Delmarva Health Plan, Inc. v. Aceto*, 750 A.2d 1213, 1216 n.12 (Del. Ch. 1999))).

Finally, Defendant asserts that SPA Section 2.05(f) creates a condition to litigation that Plaintiff failed to comply with—namely, thirty days of good-faith negotiation regarding whether the Milestones have been achieved.[116] Section 2.05(f) provides:

> If [Plaintiff] and [Defendant] disagree on whether a Milestone has been achieved, [Plaintiff] and [Defendant] shall cooperate in good faith for a period 30 days to attempt to resolve such disagreement. If after such period the matter remains unresolved, either [Plaintiff] or [Defendant] may bring an action pursuant to Section 12.10.[117]

The Court does not view that provision as dispositive here.

This circumstance was addressed in *Anvil Holding Corp. v. Iron Acquisition Co., Inc.*[118] There, the relevant agreement commanded that the parties "shall negotiate the resolution of the claims for a period of not less than twenty-five (25) Business Days" before bringing litigation.[119] The plaintiff admitted that no negotiation had taken place, but the court did not dismiss the suit.[120] Instead, it noted a lack of detail as to which party was expected to commence negotiations, the essence of those negotiations, as well as indicia that the negotiations would be futile.[121] Similar circumstances are present here.

---

[116] Def.'s Mot. at 19–20.
[117] SPA § 2.05(f).
[118] 2013 WL 2249655, at *11–12 (Del. Ch. May 17, 2013).
[119] *Id.* at *11.
[120] *Id.* at *11–12.
[121] *Id.* at *12.

SPA Section 2.05(f) placed a mutual obligation on Plaintiff and Defendant to "cooperate in good faith." But the SPA contains no explanation of what the parties had to do to fulfill that obligation. Moreover, the Amended Complaint alleges that Defendant's rejection of the Milestone deliverables was predetermined, which suggests negotiations would have been futile.[122] And with respect to Mr. Medal's termination, Mr. Medal's counsel sent two letters to Defendant in August 2023 to ascertain the purported Cause for Mr. Medal's termination.[123] The first such letter was allegedly ignored, and the second received a steadfast defense of the termination in response.[124] Plaintiff filed the initial Complaint more than forty days after the first letter was sent. Given these alleged facts, and in accordance with *Anvil*, SPA Section 2.05(f) provides no basis for a pleading-stage dismissal.

## VI. CONCLUSION

No procedural deficiencies warrant dismissal at this stage. Plaintiff's contractual claims are reasonably conceivable. Accordingly, Defendant's Motion to Dismiss the Amended Complaint is **DENIED**.

**IT IS SO ORDERED.**

/s/ *Vivian L. Medinilla*

_____

Vivian L. Medinilla, J.

---

[122] Am. Compl. ¶ 20.
[123] *Id.* ¶¶ 25–26.
[124] *Id.* ¶¶ 26–27; Def.'s Mot., Ex. F.